# **<u>EXHIBIT A</u>**

**RAVERT PLLC**
Gary O. Ravert
116 West 23rd Street, Suite 500
New York, New York 10011
Tel: (646) 966-4770
Fax: (917) 677-5419

*Attorneys for 34 W 128 Funding Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) )<br>) Chapter 11<br>) |
| 34 HOLDING CORP, | ) Case No. 18−23408 (RDD)<br>) |
| *Debtor-in-Possession.* | )<br>)<br>) |

## 34 W 128 FUNDING INC. PLAN OF LIQUIDATION

### INTRODUCTION

34 W 128 Funding Inc. ("34 Funding" or the "Plan Proponent"), a secured creditor of 34 Holding Corp., the debtor and debtor in possession in this Chapter 11 Case (the "Debtor"), hereby proposes the following Plan of Liquidation (the "Plan") for the resolution of outstanding Claims and Interests pursuant to section 1121(a) of the Bankruptcy Code. Reference is made to the Disclosure Statement dated February 19, 2019 (the "Disclosure Statement ") filed by 34 Funding in connection with the Plan. The Disclosure Statement should be reviewed in connection with voting on the Plan.

### ARTICLE I

### Definitions, Rules of Interpretation,
### Computation of Time and Governing Law

#### A. Scope of Definitions; Rules of Construction

For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in the Introduction, Article I or elsewhere in the Plan. Any term used in the Plan that is not defined herein or in the Auction Sale Procedures, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as

1

the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

## B. Definitions

1.1 "Administrative Expense Claim" means any cost or expense of administration of the Chapter 11 case allowed under Section 503(b) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of operating the business of the Debtor, and all allowances of compensation or reimbursement of expenses for legal or other professional services to the extent allowed by the Bankruptcy Court under Sections 327, 330, 331 and 503 of the Bankruptcy Code and all fees and charges assessed against the Debtor's estate pursuant to Section 1930 of Title 28 of the United States Code, including those in connection with the Auction and Sale of the Property.

1.2 "Allowed Administrative Claim" means all or that portion of any Administrative Expense Claim which is an Allowed Claim.

1.3 "Allowed Claim" means "Allowed Claim" means any Claim or portion of a Claim ( a) which is scheduled by the Debtor pursuant to Sections 521(1) and l106(a)(2) of the Bankruptcy Code (other than a disputed claim); or (b) proof of which had been timely filed with the Bankruptcy Court pursuant to Section 50l(a) of the Bankruptcy Code or on or before the date designated to the Court as the last date for filing Proofs of Claim , and with respect to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules or by an Order of the Court; or which, after objection thereto , has been allowed in whole or in part by a Final Order.

1.4 "Allowed 34 Funding Secured Claim" means the Allowed Claim held by 34 Funding against the Debtor in the amount of: $1,721,491.71 as of the Filing Date, plus post-petition interest of approximately $70,000 as of February 28, 2019, plus advances, plus postpetition legal fees in the amount of approximately $30,000, all as allowed by the Court, for a total estimated prepetition claim of approximately $1,820,000 and, subject to the limitations set forth in section 506(a)(l) of the Bankruptcy Code, secured by, among other things, a duly recorded first priority Lien on the Property.

1.5 "Auction" means the auction for the sale of the Property.

1.6 "Auctioneer" means MYC & Associates which shall be entitled to receive a commission, fee or other sum in connection with the marketing and sale of the Property.

1.7 "Auction Sale Procedures" means those bidding procedures annexed hereto as Exhibit "A", which are incorporated herein by reference and approved as part of the Plan which will govern the conduct of the Auction, the qualification of bidders to bid at the Auction and other matters related thereto.

1.8 "Avoidance Actions" means any and all Causes of Action of a trustee and debtor-in-possession under the Bankruptcy Code, including, without limitation, under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, against any other entity arising before or after the Effective Date that have not been fully resolved or disposed of prior to the Effective Date, whether or not such Claims or Causes of Action are specifically identified in the Disclosure

Statement accompanying the Plan and whether or not litigation with respect to same has been commenced prior to the Effective Date.

1.9    "Ballot" means the voting form distributed to Holders of Claims or Interests in Classes that are Impaired and entitled to vote on the Plan for the purpose of indicating acceptance or rejection of the Plan.

1.10    "Ballot Date" means the date set by the Bankruptcy Court for receipt of Ballots indicating acceptance or rejection of the Plan.

1.11    "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. § 101 et seq., and all amendments thereto.

1.12    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, White Plains, NY 10601, having jurisdiction over the Chapter 11 Case, or any such other court as may hereafter exercise primary jurisdiction over the Chapter 11 Case.

1.13    "Bar Date" means March __, 2019 for all Creditors including governmental units as the final date established by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c), for filing timely proofs of Claim arising prior to the Filing Date.

1.14    "Business Day" means any day other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.15    "Cash" means cash and cash equivalents, including but not limited to bank deposits, checks, and other similar items in each case denominated in United States dollars.

1.16    "Cash Collateral" means, from and after the Filing Date, all present and future rents, cash, funds, revenue, income or other payments for the use and occupancy by any tenants residing in the Property, and includes the proceeds, products, offspring, or other profits thereof.

1.17    "Causes of Action" means any and all actions, causes of action, suits, debts, rights to payment and claims under any insurance policies, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, un-matured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise.

1.18    "Chapter 11 Case" means the Debtor's case under Chapter 11 of the Bankruptcy Code currently pending before the Bankruptcy Court under case caption styled *In re: 34 Holding Corp.,* Case No. 18-23408 (RDD).

1.19    "Claim" means a claim against the Debtor, whether or not asserted, known or unknown, as such term is defined in section 101(5) of the Bankruptcy Code.

1.20    "Claimant" means the holder of a Claim or Interest.

1.21    "Class" means a group of Claims or Interests which are substantially similar in nature and are grouped together for similar treatment pursuant to the Plan.

1.22    "Closing" means the closing of the sale of the Property to the Successful Bidder or, as applicable, the Back-up Bidder (in each case as defined in the Auction Sale Procedures), at which point title to the Property will be transferred in accordance with the terms contained herein, in the Auction Sale Procedures, and in the Confirmation Order.  The Closing, unless ordered otherwise by the Bankruptcy Court or as set forth in the Auction Sale Procedures, shall take place on the Closing Date.

1.23    "Closing Date" means the date of the Closing or the Back-up Closing Date, which shall take place within thirty calendar days following the Auction, or such later date as may be agreed to in writing by the Plan Administrator, or as established pursuant to the Auction Sale Procedures or order of the Bankruptcy Court, with TIME BEING OF THE ESSENCE AS TO THE OBLIGATION TO CLOSE ON SUCH DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING.

1.24    "Conditions Precedent to the Effective Date" means all of the conditions set forth in Article XIII of the Plan which must be satisfied or waive, if subject to waiver, prior to the Effective Date.

1.25    "Confirmation Date" means the date upon which the Confirmation Order is entered on the docket maintained by the Clerk of the Bankruptcy Court with respect to the Chapter 11 Case.

1.26    "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

1.27    "Confirmation Hearing" means the date of the hearing to be conducted by the Bankruptcy Court to consider confirmation of the Plan (as such date may be adjourned from time to time).

1.28    "Consummation" means the accomplishment or waiver, if subject to waiver, of the conditions precedent to consummation identified at Article XIII of the Plan.

1.29    "Credit Bid" means the $1,820,000.00 opening credit bid by 34 Funding to acquire all of the Debtor's right, title and interest to the Property at the Auction for no cash, by crediting the amount of such bid against the amount of the Allowed 34 Funding Secured Claim attributable to 34 Funding's Lien against the Property.

1.30    "Creditor" means any Entity that is the Holder of a Claim arising on or before the Filing Date or under sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.31    "General Unsecured Creditor Fund" shall mean the amount of (a) $25,000 to be funded by 34 Funding if 34 Funding is the Successful Bidder or (b) $5,000 to be funded by 34 Funding if the Successful Bidder is a Cash bidder *and* there are insufficient Sales Proceeds to pay (i) all unclassified Claims in full, (ii) the Allowed 34 Funding Secured Claim, including Administrative Claim, (iii) the Webster Allowed Secured Claim, and (iv) have at least $5,000 remaining from the Sales Proceeds for General Unsecured Creditors, including any unsecured portion of the Webster Claim.

4

1.32    "Debtor" means 34 Holding Corp., the debtor and debtor-in- possession in this Chapter 11 Case.

1.33    "Debtor's Counsel" means Amanda Medina, Esq., 524 Winchester Road Norfolk, CT 06058, who has not, as of February __, 2019, been retained by Order of the Bankruptcy Court to serve as counsel to the Debtor in this Chapter 11 Case.

1.34    "Disclosure Statement" means the document filed with the Bankruptcy Court by 34 Funding in connection with the Plan and the Chapter 11 Case pursuant to section 1125 of the Bankruptcy Code and approved by order of the Bankruptcy Court as containing "adequate information" as that term is defined at section 1125(a)(1) of the Bankruptcy Code, and any exhibits annexed thereto and any documents delivered or filed in connection therewith, as the same may be amended or modified from time to time by any duly authorized or allowed amendment or modification.

1.35    "Disputed Claim" means any Claim designated as disputed, contingent or unliquidated on the Schedules and/or any Claim against which an objection to the allowance thereof has been interposed, which objection has not been determined by order of the Bankruptcy Court or such other court having jurisdiction over the matter.

1.36    "Disputed Claims Reserve" means the reserve to be established for Disputed Claims in accordance with the terms hereof, which reserve shall be established by the Plan Administrator as soon as practicable after of the Effective Date.

1.37    "Distribution" means a distribution of Cash pursuant to the Plan.

1.38    "Distribution Date" shall mean the ten (10) Business Days following the Closing Date, if applicable, and such other dates occurring as soon thereafter as reasonably practicable after the Closing when distributions under the Plan shall commence, without further Bankruptcy Court Order, and thereafter shall mean such other dates on which distributions are made to Holders of Allowed Claims in accordance with the terms hereof.

1.39    "Effective Date" means the date that the Confirmation Order becomes a Final Order and all Conditions Precedent to the Effective Date have been satisfied or waived.

1.40    "Entity" is defined as set forth in Section 101(15) of the Bankrutpcy Code.

1.41    "Estate" means the collective estate created in Debtor's Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

1.42    "Filing Date" means September 11, 2018, the date on which the Chapter 11 Case was commenced by the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code by the Debtor.

1.43    "Final Decree" means the order to be entered by the Bankruptcy Court closing the Chapter 11 Case in accordance with section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

5

1.44    "Final Order" means an order or judgment as to which order or judgment (or any revision, modification or amendment thereof) (a) the time to appeal has expired and as to which no appeal has been filed, or (b) an order or judgment which has been appealed, has been affirmed on appeal and as to which appeal the time for further appeal has expired.

1.45    "34 Funding Cash Collateral" means all Cash Collateral generated from and after the Filing Date in connection the Property.

1.46    "General Unsecured Claim" means any Claim which does not qualify as an Administrative Expense Claim, Priority Tax Claim, Priority Claim, 34 Funding Secured Claim, or Class 3 Secured Claim, and which is not an Interest.

1.47    "Holder" means any Entity that holds a Claim or Interest.

1.48    "Impaired", when used with respect to any Claim, Interest or Class, has the same meaning as that contained in section 1124 of the Bankruptcy Code.

1.49    "Insider" shall have the meaning given to such term in section 101(31) of the Bankruptcy Code.

1.50    "Interest" means any equity interest in the Debtor as defined in Section 101(16) of the Bankruptcy Code.

1.51    "Lien" means with respect to an asset or interest of the Debtor, including with respect to the Property and Cash Collateral, any mortgage, lien, pledge, charge, encumbrance or other security interest of any kind affecting such asset.

1.52    "Opening Credit Bid" means the initial opening Credit Bid by 34 Funding with respect to the Property in the amount of $1,820,000.

1.53    "Person" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

1.54    "Plan Administrator" means 34 Funding.

1.55    "Post-Confirmation Estate" shall mean the Post-Confirmation Date estate of the Debtor comprised of (a) the Post-Confirmation Estate Assets, (b) such additional or different corpus, assets or investments, if any, as the Debtor or the Post-Confirmation Debtor may from time to time acquire and/or hold and administer under the provisions of the Plan and (c) any and all dividends, rents, royalties, income, proceeds, and other receipts of, from or attributable to the foregoing all of which vests in the Plan Administrator as of entry of the Confirmation Order.

1.56    "Post-Confirmation Debtor" means the Debtor from and after the Confirmation Date.

1.57    "Priority Claim" means any Claim, other than a claim by the Office of the United States Trustee, a Priority Tax Claim or an Administrative Expense Claim, which is entitled to priority treatment under section 507(a) of the Bankruptcy Code.

1.58    "Priority Tax Claim" means any Claim which is entitled to priority treatment under section 507(a)(8) of the Bankruptcy Code.

1.59    "Professional Fees" means any claim for compensation and/or reimbursement of expenses under sections 330, 331 or 503(b) of the Bankruptcy Code by any Professionals which must be applied for in accordance with the Bankruptcy Code and the Plan and must be allowed by the Bankruptcy Court before payment thereof may be made.

1.60    "Professionals" shall have the meaning ascribed in Section 327(a) of the Bankruptcy Code in this Chapter 11 Case.

1.61    "Property" means the Debtor's three-family real property located at 34 West 128 Street, New York, NY 10027 [Block 1725, Lot 53] including all other assets of any kind assets including but not limited to valid leases to which the Debtor was party as of the Filing Date, and further including without limitation, any and all of the Debtor's rents, accounts receivable, deposits, furniture, fixtures, goods, equipment, inventory, royalties, issues, profits, revenue, income,  general intangibles, leases, licenses, tenancies, Cash, Causes of Action, products, books and records and all other personal property of any kind or description owned by the Debtor, except however, Property does not include Avoidance Actions,.

1.62    "Pro Rata" means proportionally, so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim to the Allowed Amount of the Claim is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims of the Class in which the particular Claim is included to the aggregate amount of the Allowed Claims of the Class.

1.63    "Rejection Damage Claim" means any Claim arising from the rejection of any executory contract or unexpired lease in accordance with Article VIII of the Plan.

1.64    "Rejection Damages Bar Date" means the date that is the later of (a) the first Business Day that is at least thirty (30) calendar days after entry of the order authorizing the rejection of the respective executory contract or unexpired lease; or (b) such date as the Court may fix in the applicable order authorizing such rejection.

1.65    "Related Documents" means the Plan and any documents necessary to consummate the transactions contemplated by the Plan.

1.66    "Sales Proceeds" means the proceeds of the Auction if the sale is to a cash bidder.

1.67    "Schedules" means the schedules of assets and liabilities in accordance with Bankruptcy Rule 1007(b), filed by the Debtor with the Bankruptcy Court (as same may have been or may be amended from time to time in accordance with Bankruptcy Rule 1009).

1.68    "Secured Claim" means a claim that is either secured by a Lien on property in which a Debtor has an interest pursuant to sections 506 or 1111(b) of the Bankruptcy Code or subject to setoff under section 553 of the Bankruptcy Code.

### C.  Rules of Interpretation

For purposes of the Plan (1) any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (2) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified or supplemented, (3) unless otherwise specified, all references in the Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to the Plan, (4) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, (5) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (6) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

### D.  Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### E.  Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of, the State of New York, without giving effect to its conflicts of law provisions or choice of law rules.

**ARTICLE II**
**Treatment of United States Trustee Claims**

United States Trustee Claims:  All outstanding quarterly fees owed to the Office of the United States Trustee shall be paid in full on the Distribution Date from the Sales Proceeds or, if 34 Funding is the Successful Bidder, from 34 Funding.  The United States Trustee Claims are expected to be approximately $2,000 - $5,000.

**ARTICLE III**
**Treatment of Unclassified Administrative and Priority Tax Claims**

Administrative Expense Claims.  Administrative Expense Claims are not classified under the Plan in accordance with section 1123(a)(1) of the Bankruptcy Code.  On the Distribution Date, each Allowed Administrative Expense Claim shall be paid in full in Cash from the Sales Proceeds of the sale of the Property or, if 34 Funding is the Successful Bidder, from 34 Funding. The Administrative Expense Claims include all claims against the Debtor for any costs or expenses of the Chapter 11 Case allowed under Section 503(b) of the Bankruptcy Code, including all actual and necessary expenses for preservation of the Debtor's estate, operation of the Debtor and the Debtor's allowed attorney's fees.  Based on a review of the Official Bankruptcy Form B2030 filed by the Debtor's attorney, such attorney has not taken any retainer for this representation but asserts a rate of $350 per hour.  Based upon an examination of the Court's Docket, the Debtor has made minimal filings and has not filed a retention application,

sale motion, plan of reorganization or liquation, disclosure statement, or motion to use cash collateral.  Accordingly, fees for Debtor's attorney should not be more than $7,500.00. Debtor's attorney shall file a retention application and then a fee application for fees and costs subject to approval of the Bankruptcy Court.  The Plan Proponent reserves the right to object to the Debtor's Attorney's fees if they exceed $7,500.00.  The Allowed Claim for attorney's fees shall be paid from the Sales Proceeds or, if 34 Funding is the Successful Bidder, from 34 Funding.

Each holder of an Administrative Expense Claim who seeks allowance of an Administrative Expense Claim (a) that is not incurred in the ordinary course of the Debtor's business, which Claim should be paid in the ordinary course, (b) that is not allowed by a Final Order, and that fails to timely and duly file a proof of its Administrative Expense Claim, or (c) for Professional Fees that fails to timely and duly institute a request for a hearing thereon, as provided for in the Plan, shall NOT be treated as a creditor with respect to such claim for the purposes of receiving any distribution in connection with such Administrative Expense Claim. Except as otherwise specified in the Plan or a Final Order of the Bankruptcy Court, the Allowed Amount of an Administrative Expense Claim shall not include interest on such Claim from and after the Filing Date.

Priority Tax Claims.  Priority Tax Claims are not classified under the Plan in accordance with section 1123(a)(1) of the Bankruptcy Code.  Each Holder of any Priority Tax Claim that is an Allowed Claim, shall be paid in full in Cash on the Distribution Date from the Sales Proceeds or, if 34 Funding is the Successful Bidder, from 34 Funding.  Based on a review of the public records, there appear to be approximately $10,000 in priority tax claims.

## ARTICLE IV
## Classification of Claims and Interests

4.1    Designation of Classes Pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code. Set forth at Section 4.3 below is the designation of Classes of Claims and Interests.  U.S. Trustee Claims, Administrative Expense Claims, and Priority Tax Claims of the kinds specified in sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code (set forth in Articles II and III above) have not been classified and are excluded from classification in accordance with section 1123(a)(1) of the Bankruptcy Code.

4.2    Allowed Amount in a Particular Class.  An Allowed Claim is part of a particular Class only to the extent of the amount that the Allowed Claim qualifies for treatment within that Class and is in a different Class to the extent that the remaining amount of the Allowed Claim qualifies for treatment within that different Class.

4.3    Classes.  All Allowed Claims shall be divided into the following Classes, which Classes shall be mutually exclusive:

(a)  Class 1.   Class 1 consists of all Priority Claims.

(b)  Class 2.   Class 2 consists of the 34 Funding Secured Claim.

(c)  Class 3.   Class 3 consists of the Claim of Webster Business Credit Corp.

(d)  Class 4.   Class 4 consists of all General Unsecured Claims.

9

(e) <u>Class 5</u>.    Class 5 consists of all Interests.

**ARTICLE V**
**<u>Treatment of Claims and Interests</u>**

**5.1    Class 1:  Allowed Priority Claims**

<u>Treatment</u> - Class 1 consists of the Allowed Priority Claims.  There were no non-tax, Priority Claims scheduled by the Debtor in the Schedules.  To the extent such Claims exist and become Allowed Claims, they shall be paid Pro Rata up to in full from the Sales Proceeds, or, if 34 Funding is the Successful Bidder, from 34 Funding up to the amount of the Creditor Fund.  The Plan Proponent does not believe there are any Priority Claims.  The Plan Proponent is not aware of any Avoidance Actions.  To the extent Avoidance Actions exist on behalf of the estate, the Confirmation Order will provide that the Plan Administrator shall be authorized to prosecute same on behalf of holders of Claims in Classes 1, 3, 4, and 5.  The holder of any Priority Claim, to the extent it is an Allowed Claim, shall be entitled to a Pro Rata distribution from any Avoidance Action up to payment in full.

<u>Full Settlement</u> - The treatment and consideration to be received by Allowed Priority Claims shall be, subject to the terms hereof, in full settlement and final satisfaction of such Claims against the Debtor.

Class 1 is Impaired under the Plan and is entitled to vote.

**5.2    Class 2:  Allowed 34 Funding Secured Claim**

<u>Treatment</u> - Class 2 consists of the Allowed 34 Funding Secured Claim in the prepetition amount of $1,721,491.71 as of the Filing Date, plus post-petition interest of approximately $70,000 as of February 28, 2019, plus advances, plus postpetition legal fees in the amount of approximately $30,000, all as allowed by the Court, for a total estimated prepetition claim of approximately $1,820,000.  34 Funding shall file an Administrative Claim with the Court for all postpetition interest, legal fees and advances within three (3) Business Days of the Effective Date.

If 34 Funding is the Successful Bidder and the Property is transferred to 34 Funding pursuant only to its Credit Bid, 34 Funding shall take title to the Property subject to any valid leases therein in full satisfaction of its pre- and postpetition claims against the Debtor and the Debtor's estate.  In that case, 34 Funding shall pay in full, in Cash, on the Distribution Date, the Allowed Claims in Articles II and III herein.  Further, 34 Funding shall fund in Cash no later than the Distribution Date the $25,000 Creditor Fund, which Fund shall be held in a segregated bank account for funding Claims in Classes 1 and 3, and 4.  In the event the Successful Bidder is a Cash bidder, 34 Funding shall be paid as set forth immediately below.

Any objection to the 34 Funding Secured Claim, including any Administrative Claim filed by 34 Funding, shall be filed with the Court no later than 5:00 PM, three business days prior to Closing.  In the event that there is no timely objection to 34 Funding's Claim, and if the 34 Funding is not the Successful Bidder, then 34 Funding shall be paid at the Closing the prepetition amount of $1,721,491.71, plus the full amount set forth in its Administrative Claim. In the event there is a timely filed objection to the 34 Funding Secured Claim, then funds in an amount equal to the Disputed Amount shall be placed in the Disputed Claim Reserve to be held

by Plan Administrator's attorney, Ravert PLLC, in its attorney escrow account and shall only be distributed in accordance with Article X of the Plan.

Full Settlement - The treatment and consideration to be received by 34 Funding shall be, subject to the terms hereof, in full settlement and final satisfaction of all of its Claims against the Debtor.

Class 2 is Impaired under the Plan and is entitled to vote.

### 5.3    Class 3:  Claim of Webster Business Credit Corp.

Treatment - Class 3 consists of the Allowed Claim of Webster Business Credit Corp. ("Webster"), which the Debtor Scheduled in the disputed amount of $350,000 and listed it as second mortgage lien and judgment against the Property.

In the event 34 Funding is the Successful Bidder and the Property is transferred to 34 Funding pursuant only to its Credit Bid only, then there will be no cash Sales Proceeds above the Allowed 34 Funding Secured Claim thereby rendering the Webster Claim unsecured.  In that event, the Allowed Claim of Webster will be paid, Pro Rata along with holders of Class 4 Claims, up to in full, from the Creditor Fund of $25,000 to be funded by 34 Funding.

In the event that the Successful Bidder is a Cash bidder, then from the Sales Proceeds, after payment in full, on the Distribution Date, of the unclassified Allowed Claims in Articles II and III above, and payment of the Allowed 34 Funding Secured Claim, including any 34 Funding Administrative Claim, then to the extent the Webster Claim is an Allowed Secured Claim, Webster shall be paid in full up to its Allowed Secured Claim from the Sales Proceeds.  If there are insufficient Sales Proceeds to pay a Webster Allowed Secured Claim in full, then, 34 Funding shall fund the Creditor Fund in in the amount of $5,000 for distribution to Class 1 in accordance with its priority treatment in Plan and then for Pro Rata distributions to unsecured creditors in Classes 3 and 4.  The Plan Proponent is not aware of any Avoidance Actions.  To the extent Avoidance Actions exist on behalf of the estate, the Confirmation Order will provide that the Plan Administrator shall be authorized to prosecute same on behalf of holders of Claims in Classes 1, 3, 4, and 5.  The holder of the Webster Claim, to the extent it is an Allowed Claim, shall be entitled to a Pro Rata distribution from any Avoidance Action up to payment in full.

Full Settlement - The treatment and consideration to be received by Webster shall be, subject to the terms hereof, in full settlement and final satisfaction of all of its Claims against the Debtor.

Class 3 is Impaired under the Plan and is entitled to vote.

### 5.4    Class 4:  General Unsecured Claims

Treatment - Class 4 consists of all Allowed General Unsecured Claims.  The Debtor Scheduled only one General Unsecured Claim:  Andrian George, which was Scheduled in the amount of $317,829 and was listed as disputed, contingent and unliquidated.  As of the February 3, 2019, two unsecured proofs of claim were filed including Con Edison in the amount of $645.60 and Adrien George in the amount of $317,829.00.  There were no other General Unsecured Claims filed prior to the Bar Date or scheduled by the Debtor in the Schedules.

In the event 34 Funding is the Successful Bidder and the Property is transferred to 34 Funding pursuant only to its Credit Bid, then 34 Funding shall fund the Creditor Fund in the amount of $25,000 for payment of Allowed Class 1 Claims, up to in full, and then Pro Rata to Classes 3 and 4 up to payment in full of all Allowed Claims in such Classes.

In the event that the Successful Bidder is a Cash bidder, then from the Sales Proceeds, after payment in full, on the Distribution Date, of the unclassified Allowed Claims in

Articles II and III above, and payment of the Allowed 34 Funding Secured Claim, including any 34 Funding Administrative Claim, then to the extent the Webster Claim is an Allowed Secured Claim, Webster shall be paid in full up to its Allowed Secured Claim from the Sales Proceeds.  If there are insufficient Sales Proceeds to pay a Webster Allowed Secured Claim in full, then, 34 Funding shall fund the Creditor Fund in in the amount of $5,000 for payment of Allowed Class 1 Claims, up to in full, and then Pro Rata to the Allowed Claims in Classes 3 and 4. The Plan Proponent is not aware of any Avoidance Actions.  To the extent Avoidance Actions exist on behalf of the estate, the Confirmation Order will provide that the Plan Administrator shall be authorized to prosecute same on behalf of holders of Claims in Classes 1, 3, 4, and 5.  The holder of the Class 4 Claim, to the extent it is an Allowed Claim, shall be entitled to a Pro Rata distribution from any Avoidance Action up to payment in full.

Full Settlement - The treatment and consideration to be received by Webster shall be, subject to the terms hereof, in full settlement and final satisfaction of all of its Claims against the Debtor.

Class 4 is Impaired under the Plan and entitled to vote.

**5.5    Class 5:  Interests**

Treatment - Class 5 consists of Allowed Interests in the Debtor.  In the event 34 Funding is the Successful Bidder and the Property is transferred to 34 Funding pursuant only to its Credit Bid, then 34 Funding shall fund the Creditor Fund in the amount of $25,000 for payment of all Allowed Class 1 Claims, up to in full and the Pro Rata Classes 3 and 4 up to payment in full of all Allowed Claims in such Classes.  Class 5 Interests shall only receive a distribution if Classes 1 – 4 are paid in full, subject to the terms hereof.  Class 5 Interests shall receive excess Sales Proceeds after payment in full of all unclassified Claims set forth in Article II and III, and Classes 1, 2, 3, and 4 Claims paid in full with interest at the Federal Judgment Rate or in the case of Class 2 at the statutory rate as per Claimant's Judgment.

In the event that the Successful Bidder is a Cash bidder, then from the Sales Proceeds, after payment in full, on the Distribution Date, of the unclassified Allowed Claims in Articles II and III above, and payment of the Allowed 34 Funding Secured Claim, including any 34 Funding Administrative Claim, then to the extent the Webster Claim is an Allowed Secured Claim, Webster shall be paid in full up to its Allowed Secured Claim from the Sales Proceeds.  If there are insufficient Sales Proceeds to pay a Webster Allowed Secured Claim in full, then, 34 Funding shall fund the Creditor Fund in the amount of $5,000 for payment of Allowed Class 1 Claims, up to in full and then Pro Rata to the Allowed Claims of in Classes 3 and 4.  The Plan Proponent is not aware of any Avoidance Actions.  To the extent Avoidance Actions exist on behalf of the estate, the Confirmation Order will provide that the Plan Administrator shall be authorized to prosecute same on behalf of holders of Claims in Classes 1, 3, 4 and 5.  The holder of any Claims in Classes 1, 3, and 4, the extent they are Allowed Claims, shall be entitled to a Pro Rata distribution from any Avoidance Action up to payment in full, and Class 5 shall not be entitled to any Distribution unless and until Classes 1, 3, and 4 and paid in full with interest at the Federal Judgment Rate.

Full Settlement – The treatment and consideration to be received by Holders of Allowed Interests in Class 5 shall be, subject to the terms hereof, in full settlement and final satisfaction of their respective Interests to the extent of the distributions provided for herein on account of such Interests.

Class 5 is an Impaired Class under the Plan and entitled to vote.

## ARTICLE VI
### Identification of Classes of Claims and
### Interests Impaired and Unimpaired Under the Plan

6.1     <u>Classes of Claims Impaired by the Plan and Entitled to Vote</u>. Holders of Class 1, 2, 3, 4, and 5 are Impaired and the Holders of Allowed Claims and Interests in such Classes are entitled to vote to accept or reject the Plan.

6.2     <u>Acceptance by an Impaired Class of Claims</u>.  Consistent with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan.

6.3     <u>Class of Claims Unimpaired by this Plan is Conclusively Presumed to Accept this Plan</u>.  Under section 1126(f) of the Bankruptcy Code, the Holders of Class 1 Claims and Class 3 Claims are conclusively presumed to accept this Plan, and the acceptances of Holders of such Allowed Claims will not be solicited.  There are no unimpaired Classes.

6.4     <u>Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ("Cram Down")</u>.  With respect to any Impaired Class that does not accept the Plan or is deemed to have rejected the Plan pursuant to section 1126(f) of the Bankruptcy Code, 34 Funding intends to request that the Bankruptcy Court "cram down" any such Class(es) and confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

## ARTICLE VII
### Controversy with Respect to Impairment

In the event of a controversy as to whether a Class of Claims or Interests is Impaired, the Court shall, after notice and a hearing, determine such controversy.

## ARTICLE VIII
### Unexpired Leases and Executory Contracts

8.1     <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.  The Property has been vacant for at least one year as of October 2018.  Based on such testimony, the Plan Proponent does not believe there are any valid leases in existence, As of the Effective Date, any valid leases of any tenant at the Property *shall be deemed assumed and assigned* as part of the sale of the Property and the sale *shall be subject to such leases to the extent they exist*.  The Property is being sold as-is, where is with all faults including any leases to the extent they exist.  Any other leases rejected with approval by order of the Bankruptcy Court shall be deemed to have been rejected as of Confirmation.  All assumed tenant leases will be deemed to be assumed and assigned to the Successful Bidder or Back-up Bidder, as the case may be, as of the date of the Closing.  The Confirmation Order will include provisions for the assumption and assignment of the assumed tenant leases.

8.2     <u>Bar Date for Rejection Damage Claims</u>.  Unless otherwise provided for by an order of the Bankruptcy Court entered on or prior to the Confirmation Date, any Rejection Damage Claim for an executory contract or unexpired lease rejected by the Debtor must be filed

13

with the Bankruptcy Court on or before the Rejection Damages Bar Date, with a copy thereof to (a) the Plan Proponent's counsel, Ravert PLLC; (b) counsel for the Debtor, Amanda Medina, Esq.; and (c) the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014. Any Entity that fails to file and serve its Rejection Damage Claim within the period set forth above shall be forever barred from asserting a Claim against the Debtor, the Estate, Plan Administrator, the Post-Confirmation Estate or any Property or interests in Property of the Debtor or the Post-Confirmation Estate. All Allowed Rejection Damage Claims shall be classified as General Unsecured Claims (Class 4) under the Plan.

## ARTICLE IX
## Means for Effectuating the Plan
## Implementation of The Plan

9.1   <u>General</u>. As of the date the Confirmation Order becomes a Final Order, the Plan Administrator shall control the Debtor's property including the Property, any and all bank accounts of the Debtor and any other assets, provided, however, the Property shall be operated and managed by the Plan Administrator (or such property manager he may retain) and such Property and funds shall be property of the Post-Confirmation estate. 34 Funding is deemed to consent to the use of any funds in the Debtor's bank accounts to the extent such funds are 34 Funding's Cash Collateral. The Plan Administrator or such property manager shall be authorized to continue the usual and ordinary operations of the Property pending the Auction Sale and Closing for the Property in accordance with the terms hereof, and to spend funds of the Post-Confirmation Estate as may be necessary to carry out the terms of this Plan. The Plan Administrator through the Auctioneer shall, within 45 days of entry of the Confirmation Order, cause the Property to be sold at a public Auction in accordance with the terms hereof, including the Auction Sale Procedures.

9.2   <u>Sale of the Property in Accordance With the Auction Sale Procedures.</u>

(a)   The Property shall be sold in accordance with and if required by the Auction Sale Procedures (which are annexed hereto at Exhibit "A") and the terms hereof, which shall govern all aspects of the sale.

(b)   34 Funding is deemed a Qualified Bidder with an initial bid in the amount of the Opening Credit Bid and such bid shall constitute the opening bid at the Auction.

(c)   The Confirmation Order shall contain appropriate provisions, consistent with section 1142(a) of the Bankruptcy Code, authorizing and directing the Debtor and Post-Confirmation Debtor to the extent to execute or deliver or to join in the execution or delivery of any and all instruments required to effect a transfer of the Property, including any of assumed leases, and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan and, pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax. The Plan Administrator shall be authorized and directed to carry out the Debtor's obligations in the event the Debtor or Post-Confirmation Debtor fails or refuses to do so.

(d)     Pending the Closing of the sale of the Property, the Plan Administrator shall be authorized to continue to maintain and preserve the Property, subject to the Property continuing to be operated and managed by the property manager appointed by the Plan Administrator in accordance with the terms hereof.

(e)     Notwithstanding anything contained herein or in the Auction Sale Procedures to the contrary, any person or entity acquiring the Property at the Auction shall assume and be fully responsible and liable for evicting or otherwise removing any tenants, subtenants or other persons renting, using or occupying any units therein to the extent such tenants, subtenant, or other persons do not hold valid leases that have been assumed hereby, including any of their personalty, from and after the date of the Closing.

(f)     The Plan Administrator's Authority. In accordance with the terms hereof, the Plan Administrator is authorized to, among other things, execute and/or deliver and/or to join in the execution and/or delivery of any and all instruments required to effect a transfer of the Property, without limitation, and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan.

9.3     Transfer Taxes.  The consummation of the Closing for the Property shall be deemed a transfer under, pursuant to, in connection with and in furtherance of the Plan, and such sale, transfer and delivery of any and all instruments of transfer, without limitation, in connection therewith shall not be taxed under any Transfer Taxes, stamp tax, real estate transfer tax, mortgage recording tax or similar tax and to the extent permitted by §1146(a) of the Bankruptcy Code shall not be subject to any state, local, or federal law imposing sales tax.  Such exemption shall include any transfer of the Property and the 34 Funding Cash Collateral to 34 Funding or its designee or to the Successful Bidder if it is not 34 Funding.

9.4     Transfer of Assets.  At the Closing for the Property, the Plan Administrator shall consummate the Closing and sale of the Property and such sale shall not be taxed under any law imposing a stamp or similar tax as provided for in section 1146(a) of the Bankruptcy Code.  The Successful Bidder or, if applicable the Back-Up Bidder, shall receive (a) title to the Property executed by the Post- Confirmation Debtor (and if the Post-Confirmation Debtor refuses, executed by the Plan Administrator) for and on behalf of the Post-Confirmation Debtor and its Estate to be recorded in the appropriate office of the County Clerk or such other applicable recording offices and location(s) as may be appropriate; (b) together with any and all New York State and other governmental transfer tax returns; and (c) any and all affidavits, certificates and other documents which may be necessary or are usual and customary to facilitate the transfer and recording of the deed to the Property subject to the Bankruptcy Code section 1146(a) exemption, and to effectuate the transfer of the Property.  The Post-Confirmation Debtor, the Plan Administrator, 34 Funding, and the Auctioneer, do not make any representations or warranties whatsoever.  The Property is being sold pursuant to the Plan "AS IS", "WHERE IS" in its condition on the Closing Date without any representations, covenants, guarantees or warranties by the Plan Administrator, the Post-Confirmation Estate, Plan Proponent or the Auctioneer of any kind or nature whatsoever, and free and clear of any Liens, claims or encumbrances of whatever kind or nature accrued through the date of the Auction, except the Sale is subject to any and all valid leases, and any such Liens, claims, or encumbrances, if any, shall attach to the Sales Proceeds, and remain subject to any Liens, claims or encumbrances of whatever kind or nature thereafter accrued as of the date of the Auction.  Any such Liens, claims or encumbrances of whatever kind or nature accruing from and after the Confirmation Date shall be the responsibility

15

of the person or entity acquiring the Property at the Closing, whether it be 34 Funding through a Credit Bid, or any other entity or person in accordance with the terms of the Plan and Auction Sale Procedures.

9.5    Cooperation of the Debtor's Principals. The Post-Confirmation Debtor and its authorized signatories shall, at all times, reasonably cooperate with the Plan Administrator and the Successful Bidder or Back-up Bidder, if applicable, and any of their respective successors and assigns.  The Debtor's principals shall, at all times, reasonably cooperate with the Plan Administrator and the Successful Bidder or Back-up Bidder, if applicable, and any of their respective successors and assigns in connection with the Auction, any Closing for the sale of any Property, and the administration of the Post-Confirmation Estate.  The Plan Administrator shall be authorized to execute or otherwise take any lawful acts, without limitation, to carry out the terms of this Plan and the Confirmation Order to the extent the Debtor, the Debtor's principal or principals on the Debtor's behalf, or Post-Confirmation Debtor refuses to do so itself.

9.6    Funding and Avoidance Actions. The funds needed to pay all Claims including U.S. Trustee Fees, Allowed Administrative Expense Claims including any claims of the Plan Administrator for services rendered and expenses incurred, Allowed Priority Tax Claims, and Allowed Priority Claims will be paid from the Sales Proceeds, the Creditor Fund to the extent applicable, and/or recoveries from Avoidance Actions and Causes of Action as set forth herein. The Plan Proponent is not aware of any Avoidance Actions.  To the extent Avoidance Actions exist on behalf of the estate, the Confirmation Order will provide that the Plan Administrator shall be authorized to prosecute same on behalf of holders of Claims in Classes 1, 3, 4, and 5. The holder of any Claims in Classes 1, 3, and 4, to the extent they are Allowed Claims shall be entitled to a Pro Rata distribution from any Avoidance Action up to payment in full, provided that Class 5 shall not be entitled to any Distribution unless and until Classes 1, 3, and 4 and paid in full with interest at the prevailing Federal Judgment Rate.

9.7    Management of the Debtor.  On and after the Effective Date, the Post-Confirmation Estate will be managed and administered for all purposes by the Plan Administrator through, his designee or property manager, if any, retained by the Plan Administrator and the operations of the Debtor shall cease.

9.8    Execution of Documents. The Plan Administrator, or its designee, shall execute, release and deliver, for and on behalf of the Post-Confirmation Debtor and its Estate, all documents reasonably necessary to consummate the sale of the Property contemplated by the terms and conditions of the Plan, including without limitation, any documents required in connection with the Closing and the sale of the Property in accordance with the Plan.

9.9    Filing of Documents.  Pursuant to sections 105, 1141(c), 1142(b) and 1146(a) of the  Bankruptcy  Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

9.10    Transactions on Business Days.  If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, the

transactions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

9.11    <u>Implementation</u>.    Pursuant to the Confirmation Order and upon confirmation of the Plan, the Plan Administrator shall be authorized to take all necessary steps, and perform all necessary acts, to conduct the auction and consummate the terms and provisions of the Plan. Post-Confirmation, but on or before the Distribution Date, the Plan Administrator may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate or further evidence the terms and provisions of the Plan and the other agreements referred to herein.    The Plan Administrator is hereby authorized, and shall, execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan, without the need for any additional approvals, authorizations or consents.    Upon the completion of all acts required to be performed by the Plan Administrator and the Post-Confirmation Debtor under the Plan, the Plan Administrator shall file a certification of same with the Bankruptcy Court (which may be included in the application for entry of the final decree). The Plan Administrator shall then be relieved of its duties under the Plan for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Plan Administrator and/or the Post-Confirmation Debtor, the Post-Confirmation Estate, or payments to be made in connection therewith.    From and after the Distribution Date, except as provided herein, the Post-Confirmation Estate and the Plan Administrator shall not be required to file any document, or take any action, to withdraw the Post-Confirmation Debtor's business operation from any States where the Debtor previously conducted business operations.

9.12    <u>Post-Confirmation Estate</u>

(a)    <u>Creation of Post-Confirmation Estate.</u>    On the Effective Date a Post-confirmation Estate will be created consisting of the Property, and any other property of the Debtor, from which payment in connection with all remaining Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Secured Claims, Allowed Priority Claims, Allowed General Unsecured Claims, and any other Allowed Claims, together with the Operating Expenses shall be paid as set forth in the Plan.

(b)    <u>Vesting of Estate Assets</u>.    On the Effective Date, and in accordance with the Confirmation Order, the Post-Confirmation Estate Assets shall remain with and vest in the Plan Administrator on behalf of the Post-Confirmation Estate under the control of the Plan Administrator, to be administered in accordance with the terms of the Plan.

9.13    <u>Preservation and Vesting of Claims, Rights, Demands and Causes of Action</u>. Pursuant to section 1123 of the Bankruptcy Code, the Plan Administrator, on behalf of and for the benefit of the Post-Confirmation Estate, shall be vested with, shall retain, and/or shall have the authority to prosecute and enforce any and all claims, controversies, agreements, promises, accounts, rights to legal remedies, rights to equitable remedies, rights, demands, Avoidance Actions, and Causes of Action of any kind or nature whatsoever held by, through, or on behalf of the Debtor, its Estate, the Plan Administrator, the Post-Confirmation Debtor and/or the Post-Confirmation Estate, including, without limitation, all Avoidance Actions and Causes of Action. The Plan Administrator on behalf of and for the benefit of the Post-Confirmation Estate, will also be authorized to challenge, object to and/or settle disputed Claims, without first having to seek approval from the Bankruptcy Court, in accordance with the terms and provisions hereof.    The Plan Administrator on behalf of and for the benefit of the Post-Confirmation Estate will be

authorized and empowered to bind the Post-Confirmation Estate thereto.  Any settlement by the Plan Administrator on behalf of and for the benefit of the Post-Confirmation Estate, pursuant to and in accordance with the terms hereof shall be conclusively deemed to be in the best interests of the Post-Confirmation Estate.

9.14    Recoveries.  All Cash, proceeds and/or recoveries from the Avoidance Actions and Causes of Action and all other proceeds derived from the Plan Administrator's liquidation of Post-Confirmation Estate Assets will be included in the Post-Confirmation Estate and administered and disbursed in accordance with the provisions of the Plan.

9.15    Reporting Requirements.  The Plan Administrator, with the assistance of a property manager (if the Plan Administrator so chooses), if any, shall prepare and maintain distribution schedules with respect to all Classes of Claims. When all objections to all Claims have been resolved by a Final Order or otherwise in accordance with the terms hereof, and all Post-Confirmation Estate Assets have been converted to Cash or abandoned, the Plan Administrator shall compute the final Pro Rata share of all Claimants and distribute the Cash on the Distribution Date.  No greater than ninety (90) days following the date of the Effective Date, the Plan Administrator shall file with the Bankruptcy Court and serve on the U.S. Trustee and those parties who have requested special notice Post-Confirmation, a status report and a summary financial update explaining what progress has been made toward entry of the Final Decree, including a statement of all disbursements made pursuant to the Plan along with an estimated date when an application for a Final Decree will be filed with the Court.  Until entry of the Final Decree, further status reports shall be filed periodically approximately every ninety (90) days and served on the same entities to the extent any assets remain for liquidation and distribution.  Each status report shall generally include a description of Post-Confirmation Estate Assets sold or otherwise realized upon during the relevant period, gross and net proceeds received, distributions and payments made, expenses incurred and paid, and cash on hand.  A standard Post-Confirmation Operating Report as required by the U.S. Trustee shall meet the requirements of this status report.

9.16    Post-Confirmation Debtor. Neither the confirmation of the Plan nor the occurrence of the Effective Date shall terminate the existence of the Debtor.  The property of the Debtor, including Avoidance Actions and Causes of Action, however, shall vest in the Plan Administrator on the Effective Date and the Debtor and the Debtor's principal(s) shall have no authority over such estate assets and claims of any type.  The Debtor may dissolve after, and only after, the entry of a Final Decree if it so desires. The Debtor's principals shall be responsible for preparing or causing to be prepared all local, state, or federal tax returns, filings, and/or reports that are necessary or appropriate.

9.17    Prosecution of Objections to Claims; Amendment of Schedules.  The Plan Administrator reserve the right and shall continue to have the sole authority, subsequent to the Confirmation Date but prior to the Chapter 11 case being closed, to object to any Claim or request for allowance of an Administrative Expense Claim, whether included on the Debtor's Schedules or reflected in a proof of claim filed with the Bankruptcy Court, and to initiate contested matters and to initiate such proceedings as may be necessary and appropriate in the Bankruptcy Court for a determination of the Allowed Amount of any and all Claims or requests for allowance of Administrative Expense Claims in accordance with the terms hereof.  The Debtor shall retain the right to object to any claim of 34 Funding provided however that such

objection shall be filed with the Court no later than 5:00 PM, three business days prior to Closing.

## ARTICLE X
## Distributions; Disputed Claims Reserve

10.1    <u>Timing of Distributions Due Under Plan.</u>  (a) All Distributions and payments required under the Plan to Holders of Allowed Claims will be paid from the Post-Confirmation Estate on the dates and in the manner indicated in the Plan.  Except as otherwise provided in the Plan, without in any way limiting Sections 11.5 and 11.6 below, and subject to the terms of the Plan, Distributions in respect of (i) the Allowed Claims in Class 1 of the Plan shall be made as set forth in Section 5.1; (ii) the Allowed Claims in Class 2 of the Plan shall be made as set forth in Section 5.2; (iii) Allowed Claims in Class 3 of the Plan shall be made as set forth in Section 5.3; (iv) Allowed Claims in Class 4 of the Plan shall be made as set forth in Section 5.4; and (v) Allowed Interests in Class 5 of the Plan shall be made as set forth in Section 5.5, in each case as required by the Plan from the Post-Confirmation Estate Assets on, or as soon as practicable following, the dates provided for such Allowed Claims under the Plan.

10.2    <u>Manner of Distributions</u>.  At the option of the Plan Administrator, Distributions from the Post-Confirmation Estate may be made by wire transfer, check, or such other method as the Plan Administrator deems appropriate under the circumstances and in the Plan Administrator's sole discretion.  No Distributions shall be required to be made to any Holder of an Allowed Claim in an amount less than five ($5.00) dollars, unless request is made, in writing, to the Debtor.

10.3    <u>Cash Payments.</u>  Cash payments made pursuant to the Plan will be in U.S. dollars. Cash payments made pursuant to the Plan in the form of checks issued by the Plan Administrator shall be void if not cashed within one hundred twenty (120) days of the date of the issuance. Requests for reissuance of any check shall be made directly to Plan Administrator as set forth in Section 10.8 below.

10.4    <u>Disputed Claims Reserve.</u>

(a)    Contemporaneously with the Closing on the Property, or as soon thereafter as the Plan Administrator shall determine, the Plan Administrator shall establish the Disputed Claims Reserve except that the Disputed Claim Reserve for any portion of 34 Funding's Claim shall be held in the attorney escrow account of Ravert PLLC.  For purposes of establishing the Disputed Claims Reserve, the Plan Administrator shall reserve the maximum allowable amount for each Disputed Claim.  On the date of any Distribution, the Plan Administrator shall deposit into the Disputed Claims Reserve Cash equal to the maximum amount that would be distributable to all Holders of Disputed Claims in respect of all Distributions made on that date, if such Disputed Claims were Allowed.  Except for any Reserve for a 34 Funding Disputed Claim, the Plan Administrator shall maintain the Disputed Claims Reserve in a segregated, interest bearing account and shall keep records as to the applicable amounts reserved in respect of each Disputed Claim.  The Plan Administrator shall pay any taxes due and owing with respect to the Disputed Claims Reserve, and reserve all Distributions on account of the Disputed Claims, net of such taxes.

(b)      In the event any Disputed Claim becomes an Allowed Claim, the amount of such Allowed Claim, the Plan Administrator shall distribute to the Holder of such Allowed Claim from the Disputed Claims Reserve the aggregate amount of Cash that such Holder would have received through the date of such Distribution in respect of such Disputed Claim as if such Claim has been an Allowed Claim as of the Effective Date.

(c)      From time to time as Disputed Claims are disallowed or become Allowed Claims in amounts less than what was reserved, the Cash deposited in the Disputed Claims Reserve that otherwise would have been distributed to the holders of such Disputed Claims shall be released from and no longer held in the Disputed Claims Reserve and, subject to the provisions hereof, shall be distributed in accordance with this Section 10.1.

10.5     <u>Payment of Statutory Fees</u>.  All fees payable pursuant to 28 U.S.C. § 1930 as determined by the Bankruptcy Court as of the Confirmation Date, to the extent not previously paid by the Debtor, shall be paid by the Plan Administrator from the operating income of the Plan Administrator, if any, pending the Closing on the Sale of the Property and, upon the Closing, from the Sales Proceeds and, if applicable, Avoidance Action recoveries.  If 34 Funding is the successful bidder based on a credit bid, and there are no other funds available to pay the statutory fees pursuant to 28 U.S.C. §1930, then such fees shall be paid in full by 34 Funding.

10.6     <u>Interest on Claims</u>.  Except with respect to Holders of Claims entitled to interest under applicable non-bankruptcy law or as otherwise expressly provided herein, no Holder of an Allowed Claim, including, without limitation, Holders of Allowed General Unsecured Claims under Class 4 of the Plan shall receive interest on any Distribution to which such Holder is entitled hereunder, regardless of whether such Distribution is made on the Effective Date or thereafter, unless and until all holders of Claims in Classes 1, 2, 3, and 4 have been paid in full without interest and there are sufficient funds for a distribution to Class 5.  In such case, the applicable interest rate on such Claims in Classes 1, 3, and 4 will be the Federal Judgment Rate.

10.7     <u>Withholding of Taxes</u>.

(a)      The Plan Administrator may withhold from any Property to be distributed under the Plan any Property which must be withheld for taxes payable by the Entity entitled to such Distribution to the extent required by applicable law.  As a condition to making any Distribution under the Plan, the Plan Administrator may request that the Holder of any Allowed Claim provide such Holder's taxpayer identification number and such other certification or documentation as may be deemed necessary to comply with applicable tax reporting and withholding laws.

(b)      Notwithstanding any other provision of the Plan, each Entity receiving a Distribution of Cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such Distribution, including income, withholding and other tax obligations

10.8     <u>Undeliverable or Unclaimed Distributions</u>.

(a)      All Distributions under the Plan to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth in the Debtor's Schedules or in the Claims Register in this case unless a Claim Holder notifies the Plan Administrator in writing after the

Effective Date of a change of address. Any Entity that is entitled to receive a Cash Distribution under the Plan but that fails to cash a check within one hundred twenty (120) days of its issuance shall be entitled to receive a reissued check from the Plan Administrator for the amount of the original check, without any interest, if such Entity (i) requests, in writing, the Plan Administrator to reissue such check, and (ii) provides the Plan Administrator with such documentation as the Plan Administrator requests to verify in her/his sole discretion that such Entity is entitled to such check. If an Entity fails to cash any check within one hundred twenty (120) days of its issuance or fails to request re-issuance of such check within one hundred twenty (120) days of its issuance, such Entity shall be deemed to have forfeited the amount of the Distribution or Post-Confirmation Estate provided for in such check. Any such forfeited Distributions shall revert to the Post-Confirmation Estate and the Claim of any Holder or successor to such Holder with respect to such forfeited Distributions shall be discharged and forever barred, notwithstanding any other provisions in the Plan or any federal or state escheat laws to the contrary.

(b)    In the event that any Distribution to any Holder of an Allowed Claim is returned to the Plan Administrator as undeliverable, no further Distributions will be made to such Holder unless and until the Plan Administrator is notified in writing of such Holder's then-current address. All claims for undeliverable Distributions for which no check is issued, must be made within one hundred twenty (120) days of the issuance of the original check. After such date, all unclaimed Distributions shall revert to the Post-Confirmation Estate and the claim of any Holder or successor to such Holder with respect to such Distribution shall be forfeited, discharged and forever barred, notwithstanding any provisions in the Plan or any federal or state escheat laws to the contrary. Upon such forfeiture of Cash or other Post-Confirmation Estate property, such Cash or Post-Confirmation Estate Assets shall be the property of the Post-Confirmation Estate.

10.9    <u>Post-Effective Date Operating Expenses</u>.    The reasonable fees and expenses of the Plan Administrator and his/her Professionals incurred after the Confirmation Date shall constitute Operating Expenses of the Post-Confirmation Estate and shall be payable upon presentment of a monthly statement for services rendered and for reimbursement of expenses to the Plan Administrator, with a copy to the Office of the United States Trustee. The Plan Administrator and U.S. Trustee shall have ten (10) Business Days from the receipt of any such fee and expense statements to dispute all or part of such statement. Upon the expiration of said ten (10) Business Days, provided there are sufficient funds available in the Post-Confirmation Estate, the Plan Administrator or Estate or its manager shall pay the Professionals the undisputed portion of such fees and expenses. Any disputes shall be submitted to the Bankruptcy Court for determination.

**ARTICLE XI**
**Procedures for Resolving Disputed Claims**

11.1    <u>Objections to Claims</u>.    From and after the Effective Date except as otherwise provided in the Plan, (a) only the Plan Administrator and the Office of the United States Trustee, and the Debtor solely with respect to any Claim of 34 Funding, shall have the authority to file or litigate to judgment objections to any Claims, and (b) only the Plan Administrator shall have the right to settle, compromise, and withdraw objections to unclassified or Priority Claims

11.2    <u>Procedure.</u>    Unless otherwise ordered by the Bankruptcy Court or until an objection to a Claim by the Plan Administrator is withdrawn, except as set forth above, only the

Plan Administrator may litigate the merits of each Disputed Claim until a Final Order is entered with respect to such Claim.

11.3    Payments and Distributions With Respect to Disputed Claims. No payments or Distributions shall be made in respect of any Disputed Claim until such Disputed Claim becomes an Allowed Claim.

11.4    Estimation of Claims Reserve. For purposes of effectuating the reserve provisions of the Plan, and the allocations and Distributions to Holders of Allowed Claims, the Bankruptcy Court may, on or prior to the Distribution Date, or such later date as may be established by the Bankruptcy Court and/or the Plan Administrator, pursuant to section 502 of the Bankruptcy Code, fix or liquidate the amount of any contingent or unliquidated Claim, in which event the amount so fixed will be deemed the Allowed Amount of such Claim for purposes of the Plan or, in lieu thereof, the Bankruptcy Court will determine the maximum contingent or unliquidated amount for such Claim, which amount will be the maximum amount in which such Claim ultimately may be Allowed under the Plan, if such Claim is ultimately Allowed in whole or in part. The Bankruptcy Court's entry of the Confirmation Order or any such estimation order may limit the Distribution to be made on individual Disputed Claims from the Post-Confirmation Estate, regardless of the amount finally Allowed on account of such Disputed Claims, and no Holder shall have recourse against the Post-Confirmation Estate, the Debtor, the Plan Administrator, or the Plan Proponent or any of their respective Professionals, professional consultants, attorneys, advisors, officers, directors, employees, members or their successors or assigns, or any of their respective property, as such Holder's sole recovery shall be from the Distributions to be made to Holders of Allowed Claims (subject to any claims that any Holder may have against any guarantors).

11.5    Distributions After Allowance of Disputed Claims. Distributions to each Holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, will be made in accordance with the provisions of the Plan.

11.6    Distributions After Disallowance of Disputed Claims. Holders of Allowed Claims under the Plan that receive Distributions after Allowance of such Holder's Claim, may receive subsequent Distributions if and to the extent that other Claims are disallowed or expunged and additional funds for distribution become available in each case pursuant to and in accordance with Article V of the Plan.

11.7    Setoffs and Recoupments. Except with respect to Avoidance Actions or Causes of Action of any nature released or allowed pursuant to the Plan or Confirmation Order, the Plan Administrator or its designee as instructed by the Plan Administrator, or Post-Confirmation Estate as instructed by the Plan Administrator, as the case may be, may pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off or recoup against any Allowed Claim, the Distributions to be made pursuant to the Plan on account of such Claim, any Causes of Action of any nature that the Debtor, the Post-Confirmation Estate, or that the Debtor's successors may hold against the Holder of such Allowed Claim; provided that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by the Debtor, the Post-Confirmation Debtor, the Plan Administrator or the Post-Confirmation Estate, or their successors, of any Avoidance Actions or Causes of Action that the Plan Administrator, the Debtor, the Post-Confirmation Debtor, the Post-Confirmation Estate, or their successors may possess against such Holder.

## ARTICLE XII
## Injunction, Release and Exculpation

12.1    <u>Injunction</u>.    Except as otherwise provided in or to enforce the Plan or Confirmation Order, on or after the Effective Date all Persons and Entities that have held, currently hold, or may hold, a Claim, Lien, Interest or other liability against or in the Debtor that would be discharged or satisfied upon confirmation of the Plan and the Effective Date but for the provisions of Bankruptcy Code § 1141(d)(3) are permanently enjoined from taking any of the following actions on account of such Claim, Lien, Interest or right: (a) commencing or continuing in any manner any action or other proceeding on account of such Claim, Lien, Interest, or right against the Plan Administrator, the Plan Proponent, the Post-Confirmation Estate, Post-Confirmation Estate Assets, the Property, the Debtor or any other property that is to be distributed under the Plan or the Cash Collateral Stipulation, including the 34 Funding Cash Collateral, or the Post-Confirmation Debtor; or (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Plan Administrator, the Post-Confirmation Estate, the Plan Proponent, the Debtor, the Post-Confirmation Estate Assets, the Property or any other Property to be distributed under the Plan or the Cash Collateral Stipulation, including the 34 Funding Cash Collateral, or the Post-Confirmation Debtor.

On and after the Effective Date, each Holder of an Interest in the Debtor is permanently enjoined from taking or participating in any action that would interfere with or otherwise hinder the Plan Administrator, the Post-Confirmation Estate, and/or the Successful Bidder from implementing the Plan or the Confirmation Order.

Except as otherwise provided in the Plan or the Confirmation Order, on or after the Effective Date all Creditors of, Claimants against, Interest Holders of, and Entities having or claiming an interest of any nature in the Post-Confirmation Estate are hereby permanently enjoined  and stayed from pursuing or attempting to pursue any action, commencing or continuing any action, employing any process, or any act against the Plan Administrator, the Post-Confirmation Estate, Post-Confirmation Estate Assets, the Property or any other property that is to be distributed under the Plan, including the 34 Funding Cash Collateral, or the Debtor or the Post-Confirmation Debtor on account of or based upon any right, claim or interest which any such Creditor, Claimant, Interest Holder, or other Entity may have had prior to the entry of the Confirmation Order.

12.2    <u>Exculpation</u>.    Neither the Plan Administrator, nor the Plan Proponent or any of their respective officers, directors, members, employees or other agents, financial advisors, attorneys, and accountants shall have any liability to any Holder of any Claim or Interest for any act or omission in connection with or arising out of the negotiation, preparation and pursuit of confirmation of the Plan, the Consummation of the Plan, the administration of the Plan, the Chapter 11 Case or the property to be distributed under the Plan except for liability based upon willful misconduct or gross negligence as finally determined by a Final Order of the Bankruptcy Court.


## ARTICLE XIII
## Conditions Precedent to the Confirmation
## <u>Order, the Effective Date and Consummation of the Plan</u>

13.1    Condition Precedent to Entry of the Confirmation Order.  The following condition must be satisfied on or before the Confirmation Date:  The Confirmation Order must be in form and substance reasonably acceptable to the Plan. Administrator and Plan Proponent.

13.2    Conditions Precedent to the Effective Date.  The following conditions must be fully satisfied or waived, if subject to waiver, on or before the Effective Date for the Plan to become effective: (a) the Confirmation Order must be entered by the Bankruptcy Court and become a Final Order.

13.3    Condition Precedent to Consummation.  Upon the Auction having occurred and upon the completion of the Closing, the Plan shall be deemed substantially consummated.

If the Plan has not been consummated in accordance with the terms hereof within one hundred eighty (180) days of the Confirmation Date, or such longer period as may be agreed by the Plan Administrator, the Plan Administrator shall file with the Bankruptcy Court and serve a notice indicating an inability to consummate the Plan and the Bankruptcy Court shall thereafter schedule a hearing to consider the just disposition of the Chapter 11 case.

13.4    Effect of Failure of Conditions.  If all the Conditions Precedent to the Effective Date have not been satisfied or duly waived on or before the first Business Day that is more than one hundred eighty (180) days after the Confirmation Date, or by such later date as is proposed and approved, after notice and a hearing, by the Bankruptcy Court, then upon motion by the Plan Proponent made before the time that all of the conditions have been satisfied or duly waived, the Confirmation Order shall be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such a motion, the order confirming the Plan shall not be vacated if all of the conditions to Consummation set forth in Section 13.3 are either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant to this Section 13.4, the Plan shall be void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Claims or Interests or (b) prejudice in any manner the rights of the Holder of any Claim or Interest in the Debtors.

## ARTICLE XIV
## Miscellaneous Provisions

14.1    Bankruptcy Court to Retain Jurisdiction.  Notwithstanding entry of the Confirmation Order, or the occurrence of the Effective Date or Consummation of the Plan, the Chapter 11 Case having been closed, or a Final Decree having been entered, the Bankruptcy Court (or the District Court, as the case may be) shall have and retain jurisdiction of matters arising out of, and related to the Chapter 11 Case and the Plan under, and for the purposes of, Bankruptcy Code §§ 105(a), 1127, 1142 and 1144 and for, among other things, the following purposes:

(a) To consider any modification of the Plan under Bankruptcy Code § 1127 and/or modification of the Plan before "substantial consummation" thereof as defined in Bankruptcy Code § 1101(2);

(b) To hear and determine all controversies, suits, and disputes, if any, as may arise in connection with the interpretation, implementation, consummation or enforcement of the Plan;

(c) To hear and determine all controversies, suits, and disputes, if any, as may arise between or among the holders of any Class of Claim and the Debtor or the Plan Proponent or any other party or party in interest, without limitation, proceedings to determine the allowance, classification, amount, or priority of Claims;

(d) To hear and determine all rights or Avoidance Actions or Causes of Action which may exist on behalf of the estate;

(e) To hear and determine all applications for allowance of compensation and expense reimbursement of Professionals for periods prior to the Effective Date;

(f) To hear and determine any and all applications, motions, adversary proceedings, contested matters or litigated matters;

(g) To enter a final decree closing this Chapter 11 Case; and

(h) To the extent not set forth above, to hear and determine any and all disputes, matters, proceedings, or controversies arising under or in connection with the Plan to aid in the administration or consummation of the Plan.

14.2    Binding Effect of the Plan.  Nothing contained in the Plan or the Disclosure Statement will limit the effect of confirmation as set forth in Bankruptcy Code §1141.  The provisions of the Plan shall be binding upon and inure to the benefit of the Plan Administrator, the Post- Confirmation Estate, any Holder of a Claim or Interest, or their respective predecessors, successors, assigns, agents, officers, managers, members and directors and any other Entity affected by the Plan.

14.3    Fractional Cents.  Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

14.4    Successors and Assigns.   The rights and obligations of any person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such person or Entity.

14.5    Blank Ballots.  Any Ballot which is executed by the Holder of an Allowed Claim but which does not indicate an acceptance or rejection of the Plan shall be deemed to be an acceptance of the Plan.  Any Ballot not filed in accordance with the filing instructions on the ballot pertaining to the Plan shall not be counted for voting purposes.

14.6    Authorization of Corporate Action.  Upon the entry of the Confirmation Order, all actions contemplated by the Plan will be deemed authorized and approved in all respects (subject to the provisions of the Plan), including, without limitation, the transfer and/or contribution of the Post-Confirmation Estate Assets.  On the Confirmation Date, appropriate members or

25

authorized signatories of the Debtor, the Post-Confirmation Debtor are directed to execute and to deliver, and if the Debtor or the Debtor's principals refuse, the Plan Administrator is hereby authorized and directed to execute and deliver, any and all agreements, documents and instruments contemplated by the Plan, the Post-Confirmation Estate and/or necessary for the consummation of the Plan, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without the need for any additional authorizations, approvals or consents.

14.7     Withdrawal of the Plan.  The Plan Proponent reserves the right, at any time prior to the entry of the Confirmation Order, to revoke or withdraw the Plan in its sole discretion.   If the Plan Proponent revokes or withdraws the Plan, or if the Confirmation Date does not occur, or if the Effective Date does not occur then (a) the Plan will be deemed null and void and (b) the Plan shall be of no effect and shall be deemed vacated, and the Chapter 11 Case shall continue as if the Plan had never been filed and, in such event, the rights of any Holder of a Claim or Interest shall not be affected nor shall such Holder be bound by, for purposes of illustration only, and without limitation, (i) the Plan, (ii) any statement, admission, commitment, valuation or representation contained in the Plan, the Disclosure Statement, or the Related Documents or (iii) the classification and proposed treatment (including any allowance) of any Claims in this Plan.

14.8     Captions.  Article and Section captions used in the Plan are for convenience only and will not affect the construction of the Plan.

14.9     Method of Notice.   Any notice or other communication hereunder shall be in writing (including by facsimile transmission or by e-mail) and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended (or, in the case of notice by facsimile transmission or e-mail, when received and telephonically or electronically confirmed), addressed as follows:

If to 34 W 128 Funding Inc., Plan Proponent or Plan Administrator: Ravert PLLC, 116 West 23 Street, Suite 500, New York, New York 10011, Attn.: Gary O. Ravert, Esq.

If to the Debtor, Amanda Medina, Esq., 524 Winchester Road, Norfolk, CT 06058.

Any of the above may, from time to time, change its address for future notices and other communications hereunder by filing a notice of the change of address with the Bankruptcy Court

14.10     Amendments and Modifications to Plan.  The Plan may be altered, amended or modified by the Plan Proponent, before or after the Confirmation Date, as provided in section 1127 of the Bankruptcy Code.  The Plan Proponent may also seek to modify the Plan at any time after confirmation so long as (a) the Plan has not been substantially consummated, and (b) the Bankruptcy Court authorizes the proposed modification after notice and a hearing.

14.11     Section 1125(e) of the Bankruptcy Code.  Confirmation of the Plan will constitute a finding that 34 Funding has proposed and solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

14.12     Entire Agreement.  The Plan, as described herein, and the Disclosure Statement and exhibits thereto set forth the entire agreement and understanding of the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents.  No party hereto

26

shall be bound by any terms, conditions, definitions, warrants, understandings or representations with respect to the subject matter hereof, other than as is expressly provided for herein or as may hereafter be agreed to by the parties in writing.

14.13  <u>Post-Confirmation Obligations</u>.  Under current applicable law, the Plan Administrator for and on behalf of the Post-Confirmation Estate, is required to pay fees assessed against Debtor's Estate under 28 U.S.C. § 1930(a)(6) until entry of an order closing the Chapter 11 Case.  Subject to a change in applicable law, the Plan Administrator shall pay all fees assessed against the Estate under 28 U.S.C. §1930(a)(6) from the Post-Confirmation Estate and shall file Post-Confirmation reports until entry of an order closing the Chapter 11Case of Debtor.

Dated: February 19, 2019
      New York, New York

                         34 W 128 Funding Inc.

                         By:/s/Mark Levin
                         Name: Mark Levin
                         Title: Authorized Signatory

                         <u>Prepared By:</u>

                         RAVERT PLLC

Dated: February 19, 2019
      New York, New York

                         By: /s/ Gary O. Ravert
                           Gary O. Ravert
                           116 West 23 Street, Suite 500
                           New York, New York 10011
                           Tel: (646) 961-4770
                           Direct Fax: (917) 677-5419
                           Email: gravert@ravertpllc.com

                         *Attorneys for 34 W 128 Funding Inc.*

# **EXHIBIT A**

## EXHIBIT A

## Auction Sale Procedures

The following auction sale procedures (the "Auction Sale Procedures") shall govern the auction (the "Auction") and sale (the "Sale") of that certain parcel of real property, owned by 34 Holding Corp. (the "Debtor") as debtor and debtor-in-possession, located at 34 West 128 Street, New York, NY 10027 [Block 1725, Lot 53] (the "Property") pursuant to the Plan of Liquidation (the "Plan") filed by 34 W 128 Funding Inc. ("34 Funding") on February 19, 2019 in the Debtor's chapter 11 bankruptcy case, Case No. 18−23408 (RDD) (the "Bankruptcy Case"), pending before the United States Bankruptcy Court, Southern District of New York, White Plains Division (the "Bankruptcy Court"). The Plan was confirmed by the Bankruptcy Court by Order dated _____ __, 2019 (the "Confirmation Order").

The Confirmation Order and these Auction Sale Procedures govern this auction. The Property is to be sold by the Court-approved Plan Administrator. The auction contemplates an opening credit bid followed by cash bidding. The opening bid is a credit bid of $1,820,000. The minimum opening **cash bid and minimum upset price is $1,920,000, plus broker's fee**. As set forth below, the winning cash buyer pays the auctioneer's fee of 6.00% of the winning cash bid, which fee is in addition to the amount of the winning bid. The sale to the winning bidder, as set forth herein, will close in accordance with these Procedures without further order of the Bankruptcy Court.

1. **Determination of "Qualified Bidder" Status**. On the day of the Auction, any potential bidder who wishes to participate in the Sale and Auction to bid to acquire the Property must

    (i)    fully disclose the identity of the person or entity that will be bidding for the Property including address, telephone number and email address where the bidder may be contacted,

    (ii)    sign the terms and conditions of sale, which include, among other things, without limitation:

        (a) the representation that the potential bidder has relied solely on its own independent investigation, analysis, appraisal and evaluation of the Property and did not rely upon and did not receive any written or oral statements, representations, warranties, promises or guarantees whatsoever, whether express or implied or by operation of law or otherwise, with respect to the Property,

        (b) the representation that the bid is without contingencies as to financing and/or additional due diligence and agreeing to the buyer's premium of 6.00% of the purchase price to be paid as broker's fee to MYC & Associates; and

        (c) the acknowledgment that deposits submitted by Qualified Bidders who do not become the Successful Bidder shall be returned to such Qualified Bidders within three (3) Business Days after the Auction, unless the Qualified Bidder is designated the Back-up Bidder and except as otherwise provided in the Auction Sale Procedures, and

    (iii)    tender a good faith deposit in the amount of 10% of the potential bidder's bid (the "Deposit") in immediately available funds has been made (or is concurrently being made) by wire transfer to the Plan Administrator's

1

counsel's trust account, pursuant to wire instructions to be provided by the
Plan Administrator's counsel be a "Qualified Bidder".

2. 34 Funding (the "<u>Credit Bidder</u>") is deemed to be Qualified Bidder.

3. The Successful Bidder who is the Credit Bidder shall, within two (2) Business Days after
the Auction, increase the Deposit as necessary to an amount email to ten (10%) percent of
its final bid at the Auction, time being of the essence to increase the Deposit.

4. The closing of the sale to the Successful Bidder shall occur forty-five (45) Calendar Days
after the Auction, or on such other date as the Plan Administrator shall otherwise agree to
in writing, or may otherwise be directed by Bankruptcy Court order, time being of the
essence.

5. If a Qualified Bidder is determined by the Plan Administrator to have submitted the second
highest bid at the Auction (the "<u>Back-up Bid</u>") and, therefore, to be designated the back-
up bidder (the "Backup Bidder"), and is notified in writing that Plan Administrator has
determined to proceed with the Back-up Bid after default by the Successful Bidder, such
Back-up Bidder shall close on the purchase of the Property on the Back-up Closing Date
(defined below), with time being of the essence to the Back-up Bidder's obligation to close
on the Back-up Closing Date and to pay the balance of the purchase price at Closing;

6. The Successful Bidder shall agree that the Deposit shall become nonrefundable and shall
be forfeited by such Successful Bidder as liquidated damages if that bidder fails to close
the purchase for any reason whatsoever on the Closing Date, and the same shall be true
with respect to the Back-up Bidder if the Plan Administrator decides to proceed with the
Back-up Bid.

7. **Auction.** The Auction shall be noticed for and conducted on _____ __, 2019 at 10:00
a.m. at the offices of counsel to Plan Administrator or at such location designated by MYC
& Associates.  The Auction shall be live and in person, and shall be governed by the
following procedures:

   (i)     Only 34 Funding, the Plan Administrator, Qualified Bidders, and their
           respective counsel, agents and designated representatives may participate at
           the Auction, and only such parties, any brokers or auctioneers appointed by
           Order of the Bankruptcy Court in the Bankruptcy Case and a stenographer
           may be present throughout the Auction;

   (ii)    Only Qualified Bidders shall be entitled to make any subsequent and
           additional bids at the Auction;

   (iii)   Each Qualified Bidder shall be required to confirm that it has not engaged
           in any collusion with respect to the bidding or the Sale;

   (iv)    Only Qualified Bidders shall participate in person or through a duly
           authorized representative at the Auction;

(v)    The opening bid at the auction shall be a credit bid in the amount of $1,820,000 and the buyer's premium associated with this credit bid is $25,000 plus expenses in an amount not to exceed $10,000;

(vi)    The first cash bid and minimum upset price shall be no less than $1,920,000 for the Property, **plus a buyer's premium of 6.00%** of the purchase price to be paid as broker's fee to MYC & Associates (the "Opening Cash Bid"). Any Credit Bidders who is a Qualified Bidder is deemed qualified to bid in amount equal to the Opening Cash Bid above. Qualified Bidders may thereafter make successive bids in increments of at least $25,000 (the "Bid Increments") higher than the previous bid (or such other amount as may be agreed to by the Plan Administrator);

(vii)    The Auction shall continue until such time as it appears to the Plan Administrator that none of the Qualified Bidders is prepared to advance the Auction and there is only one offer that the Plan Administrator's determines is the highest or best offer submitted at the Auction from among the Qualified Bidders (the "Successful Bid") for one or both of the Property. The Plan Administrator shall give fair warning of the close of bidding.

(viii)    If more than one Qualified Bidder submits a bid in excess of the Opening Cash Bid, after selection of the Successful Bidder, then the Plan Administrator shall determine which Qualified Bid constitutes the Back-up Bid;

(ix)    In considering bids submitted by Qualified Bidders at the Auction, the Plan Administrator may request that Qualified Bidders provide for review, at the Auction, financial information which fairly and reasonably demonstrates the Qualified Bidder's ability (and the sources of the Qualified Bidder's ability) to close on its purchase of the Property if the Qualified Bidder should be the Successful Bidder based upon the bids submitted at the Auction, except that a Credit Bidder shall not have to provide such financial information unless it bids in excess of the Opening Cash Bid in which case, the Credit Bidder shall provide sufficient information to demonstrate its ability to close on its final bid with credit given for the Credit Bid;

(x)    Deposits submitted by Qualified Bidders who do not become the Successful Bidder or Back-up Bidder shall be returned by the Plan Administrator to such Qualified Bidders within three (3) Business Days after the Auction, except as otherwise provided herein;

(xi)    Except for Credit Bidders, bids at the Auction must be all cash, without financing or other contingencies; and

(xii)    Bids at the Auction must be able to close on the Sale of the Property forty-five (45) days after the Auction.

3

8. **Obligation to Close and Default**.

   (i)     The Successful Bidder (or, upon consent of the Plan Administrator, in writing, at or prior to the Closing, an assignee of the Successful Bidder) shall close on the purchase of the Property and pay the amount of the Successful Bid, less its Deposit previously posted, on the Closing Date, with **TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO CLOSE ON THE CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING**. The Successful Bidder shall be obligated to close title to the Property and there is no contingency of any kind or nature that will permit the Successful Bidder not to proceed at the Closing other than the inability of the Plan Administrator to deliver title to the Property. In the event the Successful Bidder shall fail to timely close on the purchase of the Property in accordance with all the provisions of the sale agreement established between the Successful Bidder and the Plan Administrator (a "Successful Bidder Sale Agreement"), the Successful Bidder shall be in default and the Successful Bidder shall forfeit its Deposit. Notwithstanding the foregoing, the Plan Administrator shall have the right, but not the obligation, to extend the time for Closing by the Successful Bidder up to an additional ten (10) Business Days (the "Adjourned Closing Period"), with **TIME BEING OF THE ESSENCE** as to the Successful Bidder's obligation to close during such Adjourned Closing Period; and in such event, if the Successful Bidder shall fail to close the purchase of the Property prior to expiration of the Adjourned Closing Period, the Successful Bidder shall be in default and shall forfeit its Deposit.

   (ii)    If for any reason the Successful Bidder shall fail to timely close the Sale of the Property and the Plan Administrator determines to proceed with the Back-up Bid, the Back-up Bidder (or, upon consent granted by the Plan Administrator in writing at or prior to the Back-up Closing Date, an assignee of the Back-up Bidder) shall close on the purchase of the Property and pay the amount of the Back-up Bid, less its Deposit previously posted, on the later of the Closing Date or twenty (20) Business Days after written notice of the Successful Bidder's default in closing (the "Back-up Closing Date"), with **TIME BEING OF THE ESSENCE AS TO THE BACK-UP BIDDER'S OBLIGATION TO CLOSE ON THE BACK-UP CLOSING DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING**. If the Plan Administrator proceeds with the Back-up Bid, then the Back-up Bidder shall be obligated to close title to the Property and there shall be no contingency of any kind or nature that will permit the Back-up Bidder not to proceed on the Back-up Closing Date other than the inability of the Plan Administrator to deliver title to the Property. In the event the Back-up Bidder shall be obliged, but shall fail, to timely close the purchase of the Property in accordance with the provisions of the Sale agreement established between the Back-up Bidder and the Plan Administrator (a "Back-up Bidder Sale Agreement"), the Back-up Bidder shall be in default and the Back-up Bidder shall forfeit its Deposit. Notwithstanding the foregoing, the Plan Administrator shall

4

have the right, but not the obligation, to extend the time for Closing by the Back-up Bidder up to an additional ten (10) Business Days (the "Adjourned Back-up Closing Period"), with **TIME BEING OF THE ESSENCE** as to the Back-up Bidder's obligation to close prior to the expiration of the Adjourned Back-up Closing Period; and in such event, if the Back-up Bidder shall fail to close the purchase of the Property prior to expiration of the Adjourned Back-up Closing Period, the Back-up Bidder shall be in default and the Back-up Bidder shall forfeit its Deposit.

9. **Deposits of Successful Bidder and Back-up Bidder**.

   (i)     The Deposit submitted by the Successful Bidder shall be held by Plan Administrator pending the closing of the Sale.  The Successful Bidder's Deposit shall be applied to the Sale price upon the closing of the Sale, unless the Successful Bidder shall default and fail to close in accordance with the provisions of the Successful Bidder Sale Agreement and forfeit its Deposit.

   (ii)    The Deposit submitted by the Back-up Bidder shall be held by Plan Administrator's counsel in its trust account until the earlier of (i) the Closing, or (ii) forty-five (45) Calendar Days after the Auction; provided, however, if the Successful Bidder fails to close and Plan Administrator decides to proceed with the Back-up Bid, then the Back-up Bidder's Deposit shall continue to be held by the Plan Administrator's counsel and shall be applied to the Sale price upon the closing of the Sale on the Back-up Closing Date, unless the Back-up Bidder shall default under the provisions of the Back-up Bidder Sale Agreement and fail to close and forfeit its Deposit, which shall be remitted to the Plan Administrator for due administration in accordance with the Plan.

10. **Due Diligence**. Each Qualified Bidder is solely responsible for conducting its own due diligence and must complete its due diligence prior to the submission of its bid.

11. **Reservation of Rights**. In the interest of maximizing the results realized through the Auction, Plan Administrator reserves the right, upon further order of this Court, to: (a) modify any of the deadlines set forth in these Auction Sale Procedures; (b) modify or waive, at or prior to the close of the Auction, the procedures and terms and conditions regarding the Sale of the Property; and/or (c) adjourn the Auction.  The Plan Administrator shall have the discretion to extend the Closing Date upon request of the Successful Bidder, but such adjournment shall be limited to sixty (60) days following entry of an order of the Bankruptcy Court approving the Sale of the Property. Anything to the contrary contained in these Auction Sale Procedures notwithstanding, the Plan Administrator shall have the right to adjourn the Closing Date or the Back-up Closing Date to remedy any defect to title of the Property, but such adjournment shall be limited to sixty (60) days following entry of an order of the Bankruptcy Court approving the Sale of the Property unless the Successful Bidder and the Back-up Bidder otherwise consent.  Notwithstanding the foregoing, the Plan Administrator shall provide not less than 24 hours' written notice to the Court, the Office of the United States Trustee, and all parties who filed notices of appearance in this case if: (a) the Plan Administrator changes any deadlines set out in the Auction Sale Procedures, or (d) if the Plan Administrator decides to adjourn the auction.

12. **Additional Terms, Conditions and Procedures**.  Unless an objection to the Sale of the Property is made, the Sale is final.  Objections to the sale will be held at a hearing to be held at a date and time to be determined before the Honorable Robert D. Drain, United States Bankruptcy Judge for the Southern District of New York, 300 Quarropas Street, White Plains, NY 10601.

THE UNDERSIGNED BIDDER HEREBY CONSENTS TO AND AGREES TO BE BOUND BY THE FOREGOING AUCTION SALE PROCEDURES:

Print Name of Bidder:

Print Name and Title of Authorized Representative of Bidder:

Signature of Authorized Representative:

Date: