**RAVERT PLLC**
Gary O. Ravert
116 West 23rd Street, Suite 500
New York, New York 10011
Tel: (646) 961-4770
Fax: (917) 677-5419

*Attorneys for 34 W 128 Funding Inc. in its capacity of Plan Administrator*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>34 HOLDING CORP,<br><br>       *Debtor-in-Possession.* | Confirmed Chapter 11<br><br>Case No. 18−23408 (RDD) |

**MOTION OF PLAN ADMNINSTRATOR FOR CONTEMPT OF THIS COURT'S CONFIRMATION ORDER [Docket No. 49] CONFIRMING THE SECOND AMENDED PLAN OF LIQUIDATION [Docket No. 33] PURSUANT TO BANKRUPTCY CODE SECTION 105(a) AND RULES 7004, 9014, AND 9020 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND (I) COMPELLING COMPLIANCE WITH SUCH CONFIRMATION ORDER, (II) FINDING TRENDI HOMES LLC D/B/A TRENDIHOMES.COM, GENOA SAMPSON A/K/A GIGI FORTUNE, AND JAZZY SAMPSON A/K/A JAZZY FORTUNE IN CIVIL CONTEMPT; (III) DIRECTING TRENDI HOMES LLC D/B/A TRENDIHOMES.COM, GENOA SAMPSON A/K/A GIGI FORTUNE, AND JAZZY SAMPSON A/K/A JAZZY FORTUNE TO TURN OVER ALL BOOKS, RECORDS AND DOCUMENTS RELATED TO THEIR USE OF DEBTOR AND POST-CONFIRMATION ESTATE PROPERTY FOR SHORT-TERM RENTALS; <u>AND (IV) AWARDING COSTS AND FEES OF THE PLAN ADMINISTRATOR</u>**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

        34 W 128 Funding Inc. in its capacity as plan administrator (the **"PA"**), by and

through its counsel, hereby moves this Court (the **"Motion"**) in the confirmed chapter 11 case of

the above-captioned debtor (the **"Debtor"**), pursuant to the PA's authority under the confirmed

chapter 11 plan (the **"Plan"**) [Docket No. 33] and order confirming same (the **"Confirmation**

**Order"**) [Docket No. 49] and pursuant to section 105(a) of the Bankruptcy Code and Rules

7004, 9014, and 9020 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**),

for an order (i) compelling compliance with such Confirmation Order, (ii) finding Trendi Homes

LLC d/b/a Trendihomes.com (**"Trendi Homes"**), Genoa Sampson a/k/a Gigi Fortune (**"G.

Sampson"**), and Jazzy Sampson a/k/a Jazzy Fortune (**"J. Sampson"**, and collectively, the

**"Trendi Home Parties"**) in civil contempt; (iii) directing the Trendi Homes Parties to vacate the

property located at 34 W 128 Street, New York, NY 10027 (the **"Property"**), (iv) directing the

Trendi Homes Parties to turn over all books, records and documents related to their use of

Debtor and Post-Confirmation Estate[1] property for short-term rentals;[2] and (v) awarding costs

and fees of the plan administrator; and respectfully represents as follows:

## BACKGROUND

1.      The relevant facts leading to this motion do not actually appear to be in dispute

and, in any event, the PA does not believe they can be validly contested.  On June 28, 2019 this

Court entered the Confirmation Order confirming the Plan.  Pursuant to the Plan and

Confirmation Order, the W. 128th Street Property, formerly owned by the Debtor in this case,

---

[1] The terms used herein but not defined herein shall have the meaning ascribed to them in the Plan and/or Confirmation Order as appropriate.

[2] It does not seem disputed or disputable that Trendi Homes, through the Sampsons, ran for some period of time during the bankruptcy case an Airbnb at the Property of the Debtor and that such business was not approved by this Court, nor was the income reported to this Court.  The PA does not take any position as of today on whether the business that Trendi Homes ran was legal or illegal under New York law.  However, according to NYC's Office of Special Enforcement (referencing NYS Multiple Dwelling Law, NYC Administrative Code, and NYC Zoning Resolution), it does not appear that Trendi Homes could have operated an Airbnb legally at this Property but that is a determination for local authorities like NYC OSE, HPD or the NYS Attorney General, not the PA, to make.  The OSE literature states that in NYC it is prohibited (i) to rent entire apartments, which appears to have happened here, (ii) to key lock interior doors, which too appears to have been the case here, (iii) to rent for less than 30 days unless owners, property managers and/or hosts are 'present,' (iv) that the limit appears to two guests and this Property appears to have multiples of that number of guests, and (v) to advertise a Class A building (generally a three-family building or more – the Property at issue is a legal three family) for a period of 30 days or less, which Trendi Homes has clearly advertised.  A true and correct copy of the OSE literature (highlighted) and a recent sample of the Trendi Home advertising of this Property as well as a photograph taken by undersigned counsel on July 16, 2019 is attached hereto as Exhibit A.

vested in the PA and was to be auctioned by the PA and auctioneer for the benefit of creditors

and interest holders.  Under the Plan, the term "Property" also includes "any and all of the

Debtor's rents, accounts receivable, . . . royalties, issues, **profits, revenue, income,** general

intangibles, leases, licenses, tenancies, Cash, Causes of Action . . ."  Plan ¶1.63 (emphasis

added).  Under the Plan, in addition to the real property, Avoidance Actions and Causes of

Action also vested in the PA.  *See* Plan ¶9.13, 9.16.  On the Effective Date, which passed when

the Confirmation Order went final and non-appealable 14 days after entry, all of the Property and

Avoidance Actions of the Debtor's estate passed to the PA for transfer and/or prosecution in

accordance with the Plan.  On July 14 and 15, 2019, the PA filed and served via email and hard

copy the Notice of Entry and Notice of Effective Date.  Clearly, the Trendi Homes Parties were

not served with the Confirmation Order and Plan on that date since they were unknown to this

case as of that date.

       2.      The Confirmation Order authorizes the PA to

> to take such other steps and perform such other acts as may be necessary or
> appropriate to implement and effectuate the Plan and this Confirmation Order
> without the need of any further order of the Bankruptcy Court or authorization of
> the Debtor.

Conf. Ord. ¶3.  The Plan in numerous places grants broad authority to the PA to carry out the

provisions of the Plan and take actions for the benefit of the Post-Confirmation Estate.  This

Court retained jurisdiction over the Plan and implementation thereof.  Conf. Ord. ¶8.

       3.      On Tuesday, July 16, 2019, at approximately 3:00 PM, in the presence of Robb

Pair of Harlem Lofts, the PA posted the Property inside the front hallway, on the inside front

door facing out, and in the downstairs windows facing the street with copies of the Confirmation

Order and the Notice of Responsible Person with a warning in bold capital letters about actions

taken on the Property without the PA's consent and the effect and consequences thereof.  By the

next morning, Wednesday, someone had removed all of those postings.  It is still unknown who directed they be removed and who actually removed them.  Accordingly, some unknown person aside from the Trendi Homes Parties may too be in contempt of the Confirmation Order and the PA reserves all rights with respect to those parties when they become known.

4.       On no later than 7:26 AM on Thursday July 18, 2019, the PA through undersigned counsel served G. Sampson via email with a copy of the Plan and Confirmation Order and included with it a plain English explanation that the Property transferred to the PA pursuant to the Confirmation Order and Plan and that the Debtor lacked any further authority over the Property.

5.       Later that day, Thursday, July 18, 2019 at approximately 3:00 PM, J. Sampson advised undersigned counsel by telephone and in face-to-face conversations that she had a "lease" for the entire building and that she was a "squatter" who had lived at the Property for seven months.  The Debtor's principal Jeffrey Klein, an attorney admitted to practice in this state, has advised multiple times that (i) no such lease existed, (ii) he never signed any document giving G. Sampson, J. Sampson or Trendi Homes the right to occupy or possess the Property, and (iii) none of the Trendi Homes Parties *ever* occupied or lived at the Property to the best of his knowledge.

6.       On that same afternoon, Thursday, July 18, 2019, while the PA's representative was changing and fixing broken locks, J. Sampson called the police in an effort to force the PA to give her keys and allow her to freely come and go at the Property.  That same afternoon J. Sampson showed up at the Property and showed undersigned counsel a hard copy of a document that appeared to be a management agreement dated January 20, 2019 bearing Mr. Klein's signature typed in.  Mr. Klein flatly denies signing such document or authorizing his signature to

be affixed to it.  Purportedly upon the advice of counsel, J. Sampson refused to provide

undersigned counsel with a copy of that very document she claims represents her right to occupy

the Property.[3]  Whether or not the agreement was validly signed, it purports to be, at a bare

minimum, a post-petition, unapproved, whole building, management agreement that if taken at

face value places **all** of the Debtor's property in the control of a third-party business entity.

7.      As discussed in detail below, established Second Circuit law provides that

postpetition agreements outside of the ordinary course of business require bankruptcy court

approval and without such approval those agreements are "null and void."  *In re Lavigne*, 114

F.3d 379, 384 (2nd Cir. 1997).  Indeed, on March 28, 2019, this very subject came up in this case

during the disclosure statement approval hearing and the Court specifically stated that any such

agreement would have to be reviewed, that there were risks to consider, and such arrangement

would be considered upon submission of an application on notice to case parties.  It is

undisputed that was never done.

8.      For all of the foregoing reasons, by this Motion, PA requests that the Court

(i) determine that the Trendi Homes Parties have no valid possessory or legal interest in the

Property and direct them to immediately stop interfering in any way with the PA's possession

and control of the Property, (ii) direct the Trendi Homes Parties to vacate the Property within

three business days;[4] (iii) find that the Trendi Homes Parties exercised willful possession and

control of Post-Confirmation Estate property from and after no later than July 18, 2019, find that

---

[3] To date, neither Trendi Homes nor the Sampsons have put their counsel in touch with the undersigned or the PA despite repeated requests for them to do so.

[4] The PA will permit their personal property to stay on the Property for up to 10 days to allow them the time to find a new location and remove same; underlined however, the PA is very concerned about what "property" inside the building Trendi Homes claims to be its own.  For example, do the Trendi Homes Parties claim to own fixtures or appliances too?  What constitutes the property of Trendi Homes will have to be addressed since the PA does not want the Property damaged by the removal of anything Trendi Homes puports to own.  Clearly that precludes removal of any fixtures.

they are in knowing and willful contempt of the Confirmation Order and Plan, and hold the

Trendi Homes Parties in civil contempt; (iii) direct the Trendi Homes Parties to turn over all

books, records and documents reasonably requested by the PA related to the Trendi Homes

Parties' use of Debtor and Post-Confirmation Estate property for short-term rentals; and (v)

award costs and fees of the PA in an amount to be determined at a subsequent hearing.  Finally,

if the Trendi Homes Parties fail to timely vacate the Property, the PA requests that the Court

order the United States Marshall Service to carry out the order to vacate.

## JURISDICTION AND VENUE

9.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334.  Venue of this case and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

10.     The statutory predicate for this Motion is section 105(a) of the Bankruptcy Code

and Bankruptcy Rules 7004, 9014, and 9020.

## RELIEF REQUESTED

11.     The relief sought herein is sought pursuant to section 105(a) of the Bankruptcy

Code, Bankruptcy Rules 7004, 9014, and 9020, and this Court's inherent authority to enforce its

own orders.  "Federal courts have inherent 'equitable powers of courts of law over their own

process, to prevent abuses, oppression, and injustices[.]" *Palmer v. County of Nassau*, 977

F.Supp.2d 161, 167 (E.D.N.Y. 2013) (citing *International Prods. Corp. v. Koons*, 325 F.2d 403,

408 (2d Cir.1963)) (internal quotes omitted).  "Courts may impose sanctions and rely upon their

inherent authority even where the conduct at issue is not covered by one of the other sanctioning

provisions.  Moreover, a district court may resort to its inherent power to fashion sanctions, even

in situations similar or identical to those contemplated by a statute or rule." *Palmer*, 977

F.Supp.2d at 167.

12.     Section 105(a) states:

The court may issue any order, process, or judgment that is necessary or
appropriate to carry out the provisions of this title.  No provision of this title
providing for the raising of an issue by a party in interest shall be construed to
preclude the court from, sua sponte, taking any action or making any
determination necessary or appropriate to enforce or implement court orders or
rules, or to prevent an abuse of process.

11 U.S.C. §105(a).

13.     This Court, pursuant to section 105 of the Bankruptcy Code, is vested with the

power to enforce its own orders by virtue of its contempt powers and there is nothing

unconstitutional about this exercise. *See Gibbons v. Haddad (In re Haddad)*, 68 B.R. 944

(Bankr.D.Mass. 1987); *In re Johns Manville Corp.*, 26 B.R. 919 (Bankr. S.D.N.Y. 1983).  The

civil contempt power is necessary to protect "the due and orderly administration of justice and in

maintaining the authority and dignity of the court." *Railway Express, Inc. v. Piper*, 447 U.S. 752,

763-64 (1980).

14.     In order to hold a party in civil contempt, the movant must establish a knowing

violation of a sufficient, specific and precise order and knowledge of such order.  *See Fidelity

Mortg. Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 51 (2d Cir. 1976), *cert. denied*, 429 U.S.

1093 (1977). "Willfulness is not required and intent is irrelevant because of the remedial and

coercive nature of civil contempt."  *Shillitani v. United States of America*, 384 U.S. 364, 368

(1966); *In re Damon*, 40 B.R. 367, 374 (Bankr. S.D.N.Y. 1984). The standard to apply to

determine if there is contemptuous activity does not require a finding of bad faith motives or

willfulness, both of which are appear to be present in this case:

In order to hold the alleged contemnor in contempt, the court need only (1) have
entered a clear and unambiguous order, (2) find it established by clear and

convincing evidence that that order was not complied with, and (3) find that the
alleged contemnor has not clearly established his inability to comply with the
terms of the Order.

*Huber v. Marine Midland Bank*, 51 F.3d 5 (2d. Cir. 1995).

15.    Bankruptcy Rule 9020 governs a motion for contempt made by a party in interest.
Rule 9014 governs contested matters like this and service requirements in connection therewith.
Rule 7004 provides for the method of service.

16.    Although willfulness is not required, the Trendi Homes Parties are in willful
contempt of the Confirmation Order.  The Trendi Homes Parties were on constructive notice of
the Confirmation Order when it was prominently posted in and on the Property on July 16, 2019
where J. Sampson claims to live as a squatter.  The Trendi Parties were on actual notice when
Trendi Homes was served with the order on July 18, 2019, the same date that J. Sampson claims
she consulted with counsel about the Plan and Confirmation Order.  Indeed she presented
undersigned counsel with a printout of the assumption of leases provision from the Plan.  Despite
the clear notice of this Court's Confirmation Order, the Trendi Homes Parties have continued to
knowingly and willfully occupy, possess, control, ***and profit from*** the Property all while they
place this Post-Confirmation Estate at risk of an incident occurring at the Property.  The Trendi
Homes Parties apparently did this simply because they do not want to hurt their own ongoing
business at the Property and they want to keep making money off the Property for as long as they
can.  They have utterly disregarded the Confirmation Order and they simply do not care about
the consequences to this Post-Confirmation Estate, or the legality of their presence in the
Property, or the risk that could be borne by the Post-Confirmation Estate and creditors if there is
an incident at the Property.

17.    Whether or not, Mr. Klein ever signed or authorized his signature to be affixed to
that post-petition management agreement does not matter.  This Court specifically stated on the

record at the March 28, 2019 hearing that such an agreement would have to be brought on by an application on notice so that the details, legality, and risks of an Airbnb at that Property could be evaluated.  That is what section 363 of the Bankruptcy Code requires for transactions outside of ordinary course of business.  Indeed, to the extent the Debtor even discussed doing short-term rentals, it was never mentioned that the Airbnb business could be conducted *by a third-party* to the bankruptcy case.  After all, Airbnbs are highly regulated businesses in New York City and this building is a three-family property with no sprinkler system, no fire escape, with at least one exit door *with a keyed exit lock (i.e., if locked it cannot be opened from the inside without a key)*, and no same height contiguous buildings (thus limiting the utility of use of the roof as a safety exit).  In short, any such business arrangement conducted by a third-party to this Estate carries with it such significant implications that court-approval was required.

18.    Court approval was required to engage any third-party professional like Trendi Homes in a chapter 11 case to conduct a business within the Property.  Court approval was also required for the Debtor to incur a liability to Trendi Homes in the form of Trendi Home's purported rehabilitation of the Property during this bankruptcy case and its purported provision of art work and furnishings in the Property, which is what Trendi Homes claims to have done (as G. Sampson stated, "we put a lot of money into that Property").  Court approval would also have been required *for the Debtor* to commence short-term rentals in this particular Property even if it wanted to do it itself.  After all, the Property has an owner residency restriction, which would limit who could be an owner and thus who could run an Airbnb.

19.    Under Second Circuit law, any Airbnb management agreement required court approval.  Mr. Klein has stated that he never signed the purported agreement.  Even if he did, it

was an agreement outside of the ordinary course of business under either the vertical or

horizontal test.

> The term "ordinary course of business generally has been accepted to embrace the reasonable expectations of interested parties of the nature of the transactions that the debtor would likely enter in the course of its normal, daily business." *In re Lavigne*, 114 F.3d 379, 384 (2d Cir.1997) (citation omitted). Two tests are employed to determine whether a transaction is ordinary—"(1) the creditor's expectation test also known as the vertical test, and (2) the industry-wide test also called the horizontal test ." *Id*. (citation omitted).  Under this two-part test, "the touchstone of ordinariness is thus the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business." *Id*. at 384–85 (citation omitted).  In connection with the vertical test, the court "views the disputed transaction from the vantage point of a hypothetical creditor and inquires whether the transaction subjects a creditor to economic risks of a nature different from those he accepted when he decided to enter into a contract with the debtor." *Id*. at 385 (citation omitted).  The horizontal test involves "an industry-wide perspective in which the debtor's business is compared to other like businesses. In this comparison, the test is whether the postpetition transaction is of a type that other similar businesses would engage in as ordinary business." *Id*. (citation omitted).

*In re Winimo Realty Corp.*, 2004 WL 1924797, at *4 (S.D.N.Y. 2004).  Here, the Debtor

is a real property holding company whose purpose was resale of the Property for profit.

Even aside from the deed restriction that runs with this Property, the economic risks of

allowing Trendi Homes (which is believed to be a Wyoming limited liability company) to

manage the entire bankruptcy estate as a vacation rental business is far outside of the

ordinary course of business.  Accordingly, as set forth herein, the PA seeks among other

things an order finding the Trendi Homes Parties in civil contempt, ordering them to

vacate, finding that they do not have nor ever had a valid possessory right, contract, or

lease to possess or control the Property, and setting a hearing date for legal fees and costs

associated with the PA's efforts to address their wrongful presence and interference.

## RESERVATION OF RIGHTS

20.     The relief sought herein shall not impair in any way future claims including

Avoidance Actions or Causes of Action against the Trendi Home Parties or any other person or

entity that may be involved in Trendi Homes activities at the Property or otherwise.  The PA

expressly reserves all of its rights to bring any claim, Avoidance Action, or Cause of action

against the Trendi Home Parties and any other third parties of which it may become aware.  As

of the date hereof, the PA has very little information concerning how much money was made at

the Property during this bankruptcy case and who got the benefit of that money.  To the extent

the Post-Confirmation Estate or its creditors have been harmed by the actions of the Trendi

Homes Parties or any other persons known or unknown, the PA fully intends to fulfill its

fiduciary duties to creditors and interest holders under the Plan to prosecute any and all

Avoidance Actions or Causes of Action against those that harmed this Estate.

## NOTICE

21.     Notice of this Motion has been provided to (a) counsel to the Debtor as well as to

Jeffrey Klein, (b) the Office of the United States Trustee, (c) Trendi Homes, (d) G. Sampson, (e)

J. Sampson, (f) Keith Stiles, (g) Harlem Lofts, (h) those non-moving parties who have filed a

notice of appearance in this case, and (i) all creditors and interest holders in this case.  The

Movant asserts that such notice is reasonable and no further notice is required.

## NO PRIOR REQUEST

22.     No prior request for the relief sought in this Motion has been made to this or any

other Court.

WHEREFORE, for all of the reasons stated herein, Movant requests entry of an

Order (a) (i) determining that the Trendi Homes Parties have no valid possessory or legal interest

in the Property and directing them to immediately stop interfering in any way with the PA's

possession and control of the Property, (ii) directing the Trendi Homes Parties to vacate the

Property within three business days; (iii) finding that the Trendi Homes Parties exercised willful

possession and control of Post-Confirmation Estate property from and after July 18, 2019,

finding that they are in knowing and willful contempt of the Confirmation Order and Plan, and

holding Trendi Homes Parties in civil contempt; (iii) directing the Trendi Homes Parties to turn

over all books, records and documents reasonably requested by the PA related to the Trendi

Homes Parties' use of Debtor and Post-Confirmation Estate property for short-term rentals; and

(v) awarding costs and fees of the PA in an amount to be determined at a subsequent hearing and

setting a hearing date for same, and (b) granting Movant such other and further relief as the

Court deems just and proper under the circumstances.

Dated: July 29, 2019
        New York, New York

RAVERT PLLC

By: /s/ Gary O. Ravert
    Gary O. Ravert
    116 West 23 Street, Suite 500
    New York, New York 10011
    Tel: (646) 961-4770
    Direct Fax: (917) 677-5419

    *Attorneys for 34 W 128 Funding Inc. in its
    capacity of Plan Administrator*

# **EXHIBIT A**

Menu

## Stay in the Know

Search

Select

- About Illegal Short-Term Rentals
- Information for Hosts
- Information for Neighbors
- Information for Visitors
- 主機的資訊
- Información en español

# Information for Hosts

Are you violating short-term rental restrictions and in jeopardy of receiving a fine or legal action from your landlord? Read the following restrictions, outlined in the NYS Multiple Dwelling Law, the NYC Administrative Code, and the New York City Zoning Resolution to find out.

## Office of Special Enforcement

Information for Hosts - OSE

# Did you know:

- You cannot rent out an entire apartment or home to visitors for less than 30 days, even if you own or live in the building.

- You must be present during your guests' stay if it is for less than 30 days.

- You may have up to two paying guests staying in your household for fewer than 30 days, only if every guest has free and unobstructed access to every room, and each exit within the apartment.

- Internal doors cannot have key locks that allow guests to leave and lock their room behind them. All occupants need to maintain a common household, which means, among other things, that every member of the family and all guests have access to all parts of the dwelling unit. Internal doors with such key locks create barriers to escaping in an emergency, and may result in the issuance of a temporary vacate order.

- Under the NYC Administrative Code, property owners are responsible for ensuring their properties are maintained in a safe and code-compliant manner at all times. Property owners can and will be issued the violation for any illegal short-term rentals at their property -- even if it is conducted by tenants.

- New York State law also prohibits the advertising of an apartment in a Class A multiple dwelling, generally a building with three or more permanent residential units, for rent for any period less than 30 days. Fines for doing so range from $1,000 to $7,500, and will be issued to the person who is responsible for the advertisement.

## Submit a complaint

Do you suspect illegal short-term rental activity in your neighborhood?

Call 311 or submit a complaint online.

7/26/2019

https://www.trendihomes.com/apartments/rooms/a6114cce-dbdf-4114-a08d-fd216221fe12

TRENDI PROPERTIES | Trendihomes Vacation Rentals No Booking FEE, No Cleaning FEE

1/3

HOME

TRENDI PROPERTIES

EXPERIENCE LIVING

HOME DESIGN

About

More

+1 (310) 881-9824

Book Now

LOS ANGELES ● NEW YORK ● LONDON ● SAN FRANCISCO



*Trendi*
**HOMES**
EXPERIENCE LIVING ANYWHERE

TRENDi
PROPERTIES

↑ | Heart Of Harlem Huge 2 bed Apt

🌐 English ▼

From
**$145**
Per Night

Check-In

Check-Out

1 Adults

Book Now

https://www.trendhomes.com/apartments/rooms/a6f146ce-dbdf-4114-a08d-fd216221fef2

7/26/2019

TRENDHOMES | Trendhomes Vacation Rentals No Booking FEE, No Cleaning FEE

**Properties:**

Accommodates: 7

Beds: 1 Single(s), 1 Double(s), 2 Queen(s)

**More Info:**

Welcome to the sunny peaceful 2 bedroom apartment in the heart of Harlem next Apollo Theatre and the most amazing french Bistro restaurants and renowned soul food spots such as infamous Sylvia's and Red Rooster. This 2 double bedroom property is on the 2nd floor of a traditional NY style brownstone building with large living room and dining area as well as separate fully equipped kitchen with stainless steal applances and white tiled bathroom with bath and shower.

**Amenities:**

❄ A/C

📺 TV

⛉ Bath

📶 WiFi

🚿 Shower

🍴 Kitchen

**Check In and Out**

Check-In 03:00 PM

Check-Out 12:00 PM

**Terms:**

Minimum nights: 2

Read Our Policies





TREND PROPERTIES | Trendihomes Vacation Rentals No Booking FEE, No Cleaning FEE

© 2017 by Trendi Homes LLC

